JUDGE RAMOS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**19 CV 04380**

―――――――――――――――――――――X

James H. Brady,

*Plaintiff,*

v.

Janet M. DiFiore,
Michael J. Garcia,

*Defendants.*

―――――――――――――――――――――X

INDEX No. _____

**COMPLAINT**

**DAMAGES**

**DECLARATORY RELIEF**

**JURY DEMAND**

Plaintiff James H. Brady complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action against Defendants Justices Janet M. DiFiore

and Michael J. Garcia of the New York State Court of Appeals in their individual

capacity seeking Declaratory Relief and Damages for a series of retaliatory and

conspiracy fraud schemes in which Defendants acted with criminal intent and used non-

judicial means in a pattern of racketeering in order to force Plaintiff and his family on

September 5, 2018 to sell their 12th Floor and Roof Unit, to lose their business, their life

savings, and $70-90 million worth of air rights, and to pay over $2.5 million of Court-

Created Debt to parties who were not only not entitled to a penny, but who themselves

owed Plaintiff millions of dollars pursuant to New York and Federal Law. (Exhibit 1).

2.     Defendants Janet DiFiore and Michael J. Garcia are being sued in their

individual capacity for criminal, unconstitutional, non-judicial acts done under color of

1

law outside of Defendant's jurisdiction, which caused irreversible harm that grossly violated the New York State Canons of Professional Conduct, and which were violations of the following causes of action:

3.      (1) Violations of 42 U.S.C. §1983 of Equal Protection and Due Process; (2) Conspiracy Pursuant to 42 U.S.C. §1983; (3) Conspiracy to Interfere with Civil Rights 42 U.S.C. §1985; (4) Civil RICO 18 U.S.C. §1962; (5) Deprivation of Access to the Courts; (6) Cohesive Censorship and Retaliation Campaign; (7) Tortious Interference with Contract; (8) Honest Services Fraud; (9) Failure to Supervise; (10) Gross Negligence; (11) Defamation and Libel; (12) Intentional Infliction of Emotional Distress, and (13) Prima Facie Tort.

4.      Plaintiff seeks monetary damages, including Treble Damages pursuant to Civil RICO 18 U.S.C. §1964(c), in the amount of $225 million, and Declaratory Relief as detailed in this Complaint.

## PARTIES

5.      Plaintiff James H. Brady is the former owner of the commercial co-operative apartment located at 450 West 31st Street, 12th Floor and Roof Unit, New York, NY 10001, and resides at 510 Sicomac Avenue, Wyckoff, NJ 07481.

6.      Defendant Janet M. DiFiore has been since February 2016 the Chief Judge of the New York State Court of Appeals. From 2011-2013, Defendant DiFiore was Chairwoman of the New York Joint Commission on Public Ethics. From 2006 to 2015

2

Defendant was District Attorney of Westchester County, New York, and from 2003-

2005 a Justice of the New York Supreme Court. Defendant DiFiore is being named in

her individual capacity.

7.     Defendant Michael J. Garcia has been since February 2016 Associate Judge

of the New York State Court of Appeals. From 2005-2008 he was U.S. Attorney for the

Southern District of New York. From 2008 to 2016 a partner at the law firm Kirkland &

Ellis; from 2003-2005 he was Assistant Secretary for Immigration and Customs

Enforcement; from 2002-2003 he was Acting Commissioner of the U.S. Immigration

and Naturalization Service; from 2001-2002 he was Assistant Secretary of Commerce

for Export Enforcement; and from 1992-2001 he as an Assistant U.S. Attorney in the

Southern District of New York from. Defendant was also shortlisted to head the FBI.

Since February 2016, Mr. Garcia has been an Associate Judge of the New York State

Court of Appeals. Defendant Garcia is being named in his individual capacity.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this action pursuant to three distinct

sources: 18 U.S.C §1961 RICO alleging racketeering; pursuant to 42 U.S.C. §1983 and

§1343 (a)(3) as a civil action for deprivation of civil and Constitutional rights; and under

the U.S. Constitution Fourteenth Amendment's Equal Protection Clause as a federal

question arising out of civil rights violations.

3

9.    This Court has supplemental jurisdiction over any claims that may be raised based on state law under 28 U.S.C. §1367, which provides in pertinent part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," subject to the "common nucleus of operative facts" established in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

10.    Venue is proper in this district based to the location of the events herein alleged and the location of the plaintiff and defendants pursuant to 28 U.S.C. §1391(b).


**COMPLAINT**

11.    On September 5, 2018, Plaintiff and his wife were forced to sell their commercial co-op apartment 12th Floor and Roof Unit to pay over $2.5 million as a result of the Court-Created Debt. (Exhibit 1). The checks shows Plaintiff wrote a check for $1,705,535.71 to Marshal Stephen W. Beigel to pay IGS Realty on a Personal Guarantee that they themselves admitted they were not entitled to a penny because of the landlord's illegal actions after the leases were signed that voided the Personal Guarantees.

12.    The checks also show Plaintiff and his wife were forced to pay over $500,000.00 in judgments to lawyers and law firms that unlawfully participated in the

4

scheme to seize the air rights contractually appurtenant to Plaintiff's 12th Floor and Roof Unit pursuant to the Final Amended Offering Plan and the Appellate Division, First Department's February 11, 2010 Decision.  All of these same lawyers admitted at the March 18, 2014 Oral Arguments (Exhibit 28) the air rights were appurtenant to Plaintiff's 12th Floor and Roof Unit.

13.     Defendants knew these debts were unlawful, unjust, unconstitutional, and court-created, and colluded in these schemes prior to becoming judges on the New York State Court of Appeals.

14.     Defendants acted with criminal intent and used non-judicial means in a pattern of racketeering, which caused Plaintiff and his family to lose their business, their life savings, and $70-90 million worth of air rights that were adjudged to be appurtenant to his commercial co-op's 12th Floor and Roof Unit.

15.     As detailed below, Defendants committed these crimes by:

16.     1) Participating in the criminal replacement of Plaintiff's Offering Plan Contract and February 11, 2010 Appellate Division, First Department decision with a Supreme Court July 15, 2014 Decision which voided the $70-90 million in air rights adjudicated as being appurtenant to Plaintiff's former commercial co-op's 12th Floor and Roof Unit.

17.     2) Willfully and knowingly created unlawful debt against Plaintiff by intentionally refusing to adjudicate Plaintiff's defenses to Personal Guarantees in a case

in which a landlord had to prove at trial before Judge Barry Ostrager in Manhattan

Supreme Court that James H. Brady was liable under Personal Guarantees to three

commercial leases. *IGS Realty v. James H. Brady*.


**THE SEPTEMBER 3, 2018 EMAIL PLAINTIFF SENT TO DEFENDANTS AND
LAW ENFORCEMENT AGENCIES WAS PLAINTIFF'S LAST DITCH
EFFORT TO STOP THE CRIMES (EXHIBIT 28)**

--------- Forwarded message ---------
From: Jim Brady <bradyny@gmail.com>
Date: Mon, Sep 3, 2018 at 10:25 PM
Subject: Re: A Crime that must be dealt with before September 5, 2018
To: <jdifiore@nycourts.gov>, <mgarcia@nycourts.gov>,
<rwilson@nycourts.gov>, <efahey@nycourts.com>, <jrivera@nycourts.com>,
<lstein@newyorkcourts.com>, <pfeinman@newyorkcourts.com>,
<ekrasnow@law.nyc.gov>, David Lawrence III <David.Lawrence@ag.ny.gov>,
<cjc@cjc.ny.gov>, <zcarter@law.nyc.gov>, David McCraw
<mccraw@nytimes.com>, <katebolger@dwt.com>, Ronan Farrow
<ronan.farrow@gmail.com>, <newyork@fbi.gov>


Dear Judges of The Court of Appeals, FBI, Assistant Manhattan District
Attorneys, Assistant New York Attorney Generals and Commission on
Judicial Conduct Members.

No one has discharged their duty yet to protect me from the crimes that I have
proven and that are meant to destroy me on September 5, 2018, unless someone
stops these crimes. The crimes were detailed in my August 30,2018 email that
included an August 15, 2018 letter to the Court of Appeals

Again, the first crime is the criminal replacement of my offering Plan Contract
and February 11, 2010 decision with a Supreme Court July 15, 2014 Decision
which voided the $70-90 million in air rights these two pieces of evidence proved
were contractually appurtenant to my "12th Floor and Roof unit Apartment."

Although every one of the 40 words that defined my rights was replaced with 70 different words that voided what the contract said on its face the Justices of the Court of Appeals refused to do anything about it and in repeatedly "denied" my motions and letters pleading for help and justice although they knew the actions of Justice Kornreich were unlawful and unconstitutional.

What makes the actions of the DiFiore Court of Appeals so deplorable is that the Court did nothing to protect me from the $500,000.00 in sanctions that were also imposed to break me and make me too weak to fight back.  On September 5, I am being forced to pay these attorneys over $500,000.00 if not stopped by law enforcement.

The attached oral argument transcript from March 18, 2014, shows attorney after attorney admitting their full understanding that my contract and February 11, 2010, Appellate Division Decision gave my 12th Floor and Roof Unit Apartment the right to have the utilization of the premises permissible development rights "to the extent that may from time to time be permitted under applicable law."

Yet now I must pay them over $500,000 as punishment for filing my lawsuit against their New York Developer Clients after they chose to use their control over the courts and that of their billionaire developer clients to have Judge Kornreich unlawfully alter and rewrite my contract and the higher Court Decision to void what the evidence said on its face in her deliberately corrupt July 15, 2014, Decision. (Attached as Exhibit 2).

Comparing what Kornreich said in her March 18, 2014 Oral Argument transcript to what she said in her July 15, 2014 proves total corruption and the need for immediate protection.  This evidence was already completely ignored by the Court of Appeals.

I even provided the Court of Appeals the September 10, 2014 Oral Argument transcript where Judge Kornreich did not dispute that she unlawfully rewrote the contract and the higher court decision yet the Justices of the Court of Appeals went along with all of this unlawful actions.  The law enforcement agencies and the Commission on Judicial conduct must get involved immediately.

The Second scandal that must also be addressed immediately involves another New York State Supreme Court Justice Barry Ostrager. First Department Justices Barbara Kapnick, Peter Tom and Troy Webber in addition to the seven Justices of the Court of Appeals.

The Oral Argument transcript from May 16, 2018 proved the Judges refused to apply the law that voided the personal guarantees. The Oral Argument transcript shows they came in with the scheme, not to ask or answer a single question.

The transcript also shows they refused to address the fact that it was a total lie (in many ways) when Judge Ostrager told the Jury that only one-floor plan was legal for meeting hall use and that otherwise James H. Brady (who was not a party to the contract) broke the contract and now owes a $1.7 million dollar judgment. All the judges, including the Judges of the Court of Appeals, were given the original DOB-approved plans proving the claim was false but have completely ignored this fact and have refused to address the false charge.

Judge Ostrager does not dispute, and the record proves that he had participated in the scheme to make this false jury charge after I refused to accept the Landlord's offer to pay me $50,000 to settle.

Judge Ostrager does not dispute that he became a brand new judge appointed on June 9, 2015 and that he was put on my case in an attempt to destroy me and that he was rewarded for his criminal conduct. After his surprise totally false Jury charge that resulted in what is now a $1.7 million dollar Judgment, he was immediately appointed to the Commercial Division. The trial was from June 23, to June 26, 2015 and based on that outcome he was immediately appointed to the Commercial Division.

The Court of Appeals was made aware Judge Ostrager does not dispute any of his criminal conduct that resulted in me having to pay the landlord who destroyed my businesses $1.7 million dollars on September 5, 2018, unless law enforcement or the Court of Appeals immediately steps in to protect me which you are duty bound to do.

Law enforcement should also look at the January 17, 2018 Oral Argument Archives from the First Department website (Minute 25 and 55 seconds) where the Judges are shown again being corrupt. Most of the time Judge Richard Andrias is asking stupid questions to use up the few minutes I am given. However, he is shown admitting that there is retribution accepted for people that " mess with the wrong judge" and said to me "you're messing with the wrong judge". The taped oral argument shows the Judges sitting silent and refusing to address the line of reasoning or legal authority that was used to rewrite my contract to void what the contract said on its face.

Law enforcement must also look at my website bullyjudges.com and my YouTube posts under James H. Brady.

It's clear I am facing repeated retribution that is criminal and needs to be addressed immediately. So far my 14th Amendment right to equal protection under the law has been unconstitutionally ignored. These retaliatory acts must be stopped before September 5, 2018, when I will be forced to pay 2.3 million from the forced sale of my 12th Floor and Roof unit apartment to people that have no right to anything.

It should be noted that all the judges of the Court of Appeals needed to do was say that the lower court decision is void because the higher Court Decision governs   and all they needed to do was apply the law to the admitted facts that voided the guarantees when the risk and " as is condition' was changed by the landlords illegal acts after the leases and guarantees were signed but they refused to do so up to this point and I urge them to take advantage of this final opportunity to apply the law to the facts now before these unjust criminal acts take place or explain your reasoning why the law should not be applied to James H Brady

I need protection and can be reached at bradyny@gmail.com

James H. Brady


## THE CRIMES DETAILED IN PLAINTIFF'S SEPTEMBER 3, 2018 EMAIL SATISFY THE CIVIL RICO REQUIREMENTS

18.     §1961(26) Section 1964(c) identifies four factors that must be satisfied to establish standing for a civil RICO claim: (1) the plaintiff must be a "person" (2) who sustains injury (3) to its "business or property" (4) "by reason of" the defendant's violation of §1962.1."

19.     RICO's requirements of a culpable "person" who conducts the affairs of a distinct "enterprise" through a "pattern" of "racketeering" in a way that proximately causes injury.

20.     To state a claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 245 (1989).

21.     In the present case, Plaintiff is a person who lost his entire family business by reason of Defendants' actions, inactions and violations of §1962.1.  The details of these crimes show there was a pattern of racketeering that goes back to the administration of former Chief Justice Jonathan Lippman.  As shown below, Defendants knew of the crimes committed against Plaintiff and continued the same pattern and enterprise of racketeering.

22.     Defendant Janet DiFiore knew about Plaintiff James H. Brady and the crimes he has been seeking justice for at least three years prior to becoming Chief Justice of the Court of Appeals.

## THE RICO CONDUCT OF THE JANET DIFIORE COURT OF APPEALS IS CORROBORATED BY OTHER NEW YORK STATE JUDGES AND OFFICERS OF THE COURT

23.     The accusations of Defendants' corruption are corroborated by many, including: 1) former Appellate Division, First Department Judge David Saxe, and 2) the

Heads of the two Unions for the 3,4000 Officers of the State of New York Court System.

24.    Retired Appellate Division Justice **David Saxe**, now a partner at Morrison Cohen LLC, said the an assessment of the courts in a June 2017 New York Post article:[1]

"Our state court system is absolutely insane.  It has enabled political people to control the courts, and they don't want to give up – so it's very hard to get legitimate change that would be beneficial to the public."

25.    When former Judge Saxe says, "They let the politically connected control the courts," he was including the New York Courts' treatment of Plaintiff and the seizure of incredibly valuable air rights at the heart of the Hudson Yards District to politically-connected parties who owed Plaintiff millions of dollars.

26.    Further, on October 31, 2018 the Heads of the Union protested the systematic corruption of the New York State Court System under Defendant DiFiore by producing t-shirts printed with the OSC of "Office of Court Administration" as "Organized Crime Association." Justice DiFiore never disputed this claim.

27.    On April 12, 2017, the first African-American judge to the NYS Court of Appeals, Sheila Abdus-Salaam, 65, was discovered floating in the water near 132nd Street and Hudson Parkway around 1:45 p.m., according to police sources.

---

[1]    https://nypost.com/2017/06/07/how-the-politically-connected-control-the-new-york-court-system/

28.     This was the same day the Appellate Division, First Department judges submitted another deliberately deceptive decision in the case of *IGS Realty v. James H. Brady* that was announced on April 13, 2017.

29.     Judge Abdus-Salaam committed suicide because of the corrupt decisions she had to go along with during her tenure as a judge in the Appellate Division, First Department, and later the Court of Appeals.  Newspaper articles stated that the distress Judge Abdus-Salaam was under was because of pressure from work: that she was pressured to go along with deliberately deceptive decision, like the ones that form the basis for this Complaint.

30.     Similarly, in 2016, fact-checking journalism outlet Politifact confirmed that New York has the most-corrupt state government in the U.S.  "Lawmakers led away in handcuffs seem like clear signs of a corruption problem in New York State," Politifact reported before the news of the Cuomo arrests broke. "But the worst in the nation?  We rate this claim as true."

31.     The New York State Court of Appeals and the various Appellate Division courts, unlike those of other states, do not provide any material online.  Everything is done privately and secretly, and the public cannot access court papers.  So when Defendants issue a decision, there is no way to access the underlying court papers, which means Defendants are free to keep "Court Family Secrets" and avoid any public

scrutiny, which is why Plaintiff is including 36 additional Exhibits to this Court.

## THE FACTS BELOW CONCLUSIVELY PROVE DEFENDANTS ARBITRARILY AND CAPRICIOUSLY VIOLATED PLAINTIFF'S DUE PROCESS CONSTITUTIONAL RIGHTS

32.    The Due Process Clause of the Fourteenth Amendment provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

33.    "The Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression," Collins, 503 U.S. at 126, 112 S.Ct. 1061 (quoting *DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, (1989)*.

34.    "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

35.    Janet DiFiore and Michael Garcia have deliberately completely ignored and discarded the application of these constitutional due process rights to the detriment of Plaintiff James Brady and his family.  The evidence proves Defendants Janet DiFiore and Michael J. Garcia, prior to becoming judges and  under color of law, have been arbitrary and oppressive in their unconstitutional treatment of James Brady.

36.    This first RICO conspiracy fraud scheme in which Defendants participated in was to replace Plaintiff James H. Brady's Offering Plan Contract (Exhibit 2) and

February 11, 2010 Appellate Division, First Department Decision (Exhibit 3) with the
unlawful lower court July 15, 2014 Supreme Court Decision (Exhibit 4), which voided
the $70-90 million in air rights both the Offering Plan Contract and February 11, 2018
affirmed were contractually appurtenant to Plaintiff's 12th Floor and Roof Unit
Apartment.

37.    The Seventh Paragraph Footnote to the Schedule of Units in the Final
Amended 1980 Offering Plan for the commercial co-operative 450 West 31st Street
Owners Corp reads as follows:

> "Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in
> addition to the utilization of the roof, the right to construct or extend structures on
> the roof or above the same, to the extent that may from time to time be permitted
> under applicable law."

38.    The Appellate Division, First Department February 11, 2010 Decision
included the following words:

> Pursuant to paragraph 7, that plaintiffs have the right to construct or extend
> structures upon the roof or above the same to the extent that may from time to
> time be permitted under applicable law, unanimously affirmed, without costs.

39.    Supreme Court Justice Shirley Kornreich on July 15, 2014 unlawfully
rewrote the contract and higher Court Decision to void what these documents said on
their face:

> "It has already been adjudged that while the owners of the unit *may* have the right
> to erect additional structures on the roof, that right does not entitle them to use any
> floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 & *4-
> *5 ["Nothing herein shall be construed as holding that plaintiffs have the right to
> use all or any part of the Tars in connection with such construction or extension"]

## DEFENDANTS DIFIORE AND GARCIA KNEW AND WERE TOLD REPEATEDLY THAT THE REWRITING OF PLAINTIFF'S CONTRACT WAS UNLAWFUL FOR AT LEAST FOUR REASONS

40.     **A)** Courts are not allowed to rewrite contracts to void what they say on their face.  New York State law is very clear that an unambiguous contract (and Plaintiff's contract was ruled unambiguous) cannot be rewritten by the courts:

> "When parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms." *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 10 [1990].

> "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." "In the absence of any ambiguity, we look solely to the language used by the parties to discern the contract's meaning." *Vermont Teddy Bear v. 538 Madison Realty Co.*, 308 AD2d 33 (2004).

41.     **B)** An Offering Plan is the controlling document in any co-operative case. In *Fairmont Tenants v. Braff,* for example, the New York State Court of Appeals reiterated that "the offering plan is the 'controlling document' that gives the proprietary lease meaning," *Fairmont Tenants,* No. 152489/2015, June 7, 2018, citing *Sassi-Lehner v Charlton Tenants Corp.*, 55 AD3d 74, 78 (1st Dept. 2008).

42.     In *Fairmont Tenants*, the offering plan was held as the controlling document, "The offering plan makes clear that there is no outdoor space allocated exclusively to defendants' apartment." *Ibid.*  Plaintiff's Offering Plan contract, on the other hand, was rewritten by the courts in order to void the explicit meaning of the

contract, which all parties to the contract agreed with, and for which no alternative meaning has ever been given because none exists.

43.     **C)** Courts are not permitted to void higher court decisions.  The Appellate Division, First Department ruled on August 9, 2018 in *Craig B. Massey v. Christopher V Brian, et al.*

> "An appellate court's resolution of an issue on a prior appeal constitutes the law of the case and is binding on the Supreme Court as well as on the appellate court ... [and] operates to foreclose re-examination of the question absent a showing of subsequent evidence or change of law" *Massey*, 107 AD3d 544 [1st Dept. 2013].

44.     **D)** Collateral Estoppel and issue preclusion: the issue was precluded from being interpreted again in order to void the rights that had already been determined.

45.     Even worse the same Judge that unlawfully rewrote the contract to void its rights issued $500,000 in sanctions against James H. Brady

46.     James H. Brady is politically powerless, and these unconstitutional, unlawful and retaliatory acts were done at the request of the politically connected.


**DEFENDANTS PARTICIPATED IN A SECOND RETALIATION SCHEME BY REFUSING TO ADJUDICATE THE ISSUE OF THE PERSONAL GUARANTEES THAT WERE VOIDED AS A MATTER OF LAW**

47.     A second retaliation conspiracy fraud scheme in which Defendants willfully and knowingly created unlawful debt against Plaintiff by intentionally refusing to adjudicate Plaintiff's defenses to Personal Guarantees in a case in which a landlord had to prove at trial before Judge Barry Ostrager in Manhattan Supreme Court that James H.

Brady was liable under Personal Guarantees to three commercial leases. *IGS Realty v. James H. Brady*.

## Defendants Knew the Landlord Admitted at Trial and in Court Papers that His Illegal Actions Voided the Personal Guarantees

48.     The Landlord's testimony proves Defendants refused to apply binding law and precedent provided by the Landlord's own attorney and instead conspired to Court-Created Debt as part of a retaliation scheme.

49.     The Landlord's attorney Robert Fass on June 25, 2015 during closing arguments included admissions of Plaintiff's due diligence and of the Landlord's illegal actions after the leases were signed which voided the Personal Guarantees:

> "So let's begin at the beginning.  In 2001, Mr. Ifrah placed an ad in the New York Times. He (Brady) goes to the space, checks it out, and puts a deposit down a check on one of the spaces. Then speaks with his father who has great experience in real estate who tells him this is in the special garment district for zoning, so he better check out whether his use is permitted.
>
> So he puts a stop on the check and tells Mr. Ifrah he wants to do his due diligence, which he does.  And he checks the whole building from top to bottom, legal and physical conditions, and concludes that everything is fine. The building's legal, the physical conditions are legal, and everything else is in good and satisfactory condition. So then he writes another check and rents the space. After that in the same year and the following year he rents two other spaces" (R. 882).

## The Landlord's Attorney Admitted The Landlord Destroyed the Certificate of Occupancy and Broke the Lease

> "There is no doubt at the time after the leases were signed Mr. Ifrah started renting     space and he had to pay a lot of fines to do it." (R. 888-889)
>
> So after 2007 he didn't have a certificate of occupancy of any sort." (R. 902)

**Mr. Fass Quotes the Following in His Memorandum of Law Showing that the Personal Guarantees Were Voided by These Actions**

50.   "A guarantee will not be enforced where the modification"… impermissibly increased [guarantor's" risk] without his consent.... *White Rose Food*, 99 NY2d at 591; *Arlona Ltd. Partnership v 8th of Jan. Corp.*, 50 AD3d 933, 934 9 (First Dept. 2008), and Williston Contracts states:

> "There can be no doubt that a guarantor, when sued alone by the creditor, can successfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal.  In other words, the guarantor may always assert a total failure of consideration. This is because the guarantor is not liable unless the principal is bound (4 Williston Contracts (rev.ed) 1213)."

**Defendants, the Appellate Division Judges, and Supreme Court Judge Barry Ostrager Will Not Accept the Admissions that the Personal Guarantees are Void**

51.   Defendants, the Appellate Division, First Department judges, and Judge Barry Ostrager have participated in this crime by failing to adjudicate the only issue of the case and by going along with Judge Ostrager's unlawful jury charge, which railroaded Plaintiff by avoiding the central issue of the case altogether, and instead shifted the burden to Plaintiff to prove that *he* was operating a Department of Building-compliant event space.  Though this was not part of the case, Plaintiff nevertheless proved that he was in fact operating legally and that it was the Landlord who had admitted to breaking the law and the contract.

52.   Defendants and Judge Ostrager ignored all of this and retaliated against Plaintiff resulting in James and Jane Brady having to pay the Landlord over $1.7 million

18

on September 5, 2018 when the Landlord and his attorney had repeatedly admitted the Landlord was not entitled to a penny.

53.     Plaintiff April 6, 2017, *Defendant's Opposition to Plaintiff's Motion for Settlement Judgment*, (Exhibit 5) and the April 7, 2017 one-page hand written decision issued by Judge Ostrager entirely discarding and ignoring Plaintiff's *Opposition* combined prove conclusively that Plaintiff's defense to the Personal Guarantees were totally ignored, and that Judge Ostrager was blatantly retaliating against Plaintiff.

54.     A review of the video of the **May 16, 2018 Oral Arguments** before the Appellate Division, First Department in *IGS Realty v. James H. Brady*, found on Plaintiff's website www.bullyjudges.com proves that the judges sat silent and refused to adjudicate the issue of the personal guarantees in an unconstitutional and retaliatory scheme.  The panel of sitting judges refused to answer a "Yes or No" question, and refused to apply the law to the admitted facts of the case record.

55.     In retaliation as part of this fraud scheme, the Court of Appeals denied addressing this injustice in an **August 30, 2018 Decision (Exhibit 6)**, ignoring the issue entirely and not mentioning any of Plaintiff's defenses for the Personal Guarantees in its decision.

56.     Defendants then denied Plaintiff's *Motion for Reargument* on **October 23, 2018 Decision (Exhibit 7)**, again refusing to adjudicate or address the only central issue

of the case, completely violating Plaintiff's constitutional right and their duty to adjudicate an issue in court.

57.    Defendants were presented with the check written to the landlord for $1.7 for an issue that was never adjudicated, which means this was court-created debt as a result of disregarding all law and precedent on Personal Guarantees.

## AS PART OF THE RETALIATORY SCHEME, PLAINTIFF WAS LIBELED IN THREE COURT DECISIONS BY MANHATTAN SUPREME COURT JUSTICES THAT WERE NEVER REVERSED OR AFFIRMED BY THE HIGHER COURTS

58.    In the July 15, 2014 decision rewriting Plaintiff's Offering Plan contract, Justice Kornreich also libeled Plaintiff in her decision in a series of retaliatory statements meant to prejudice future courts, judges and the public record against Plaintiff:

> "It is clear from the papers and the transaction's history that Brady acted in bad faith in bringing the instant cases." (Page 21).

> "His misinterpretation of prior judgment, his feigned ignorance or the origin or the meaning of the phrase "transferable development rights," and his argument that a decision, which he appealed to no avail, is not binding are but a few examples of the frivolous arguments made in the instant actions." (Page 21).

> "In short, Brady has dragged more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance." (Page 22).

> "This is a near perfect example of frivolous conduct that warrants defendants request for the imposition of sanctions." (Page 23).

> "The Court declines to impose a filing injunction upon Brady at this time, though he is warned not to further test the courts patience by prosecuting claims that have been determined or that he has been told are not ripe." (Page 23).

59.     On May 6, 2015, Plaintiff filed a Complaint against the Manhattan District

Attorney Cyrus Vance for violation of 42 U.S.C Sec.1983, willful misconduct, gross

negligence, and prima facie tort. _James Brady v. The New York District Attorney's_

_Office_, Index No. 154496/2015. The case was assigned to Justice Margaret A. Chan.

60.     Justice Chan not only dismissed the case after a pre-Answer motion to

dismiss, but she issued an intentionally destructive decision as a form of retaliation that

defamed and libeled Plaintiff, a decision that has never been affirmed by any court but

which is now part of a permanent judicial record. Justice Chan's outrageous and libelous

November 23, 2015 Decision stated the following:

> "During motion practice in Brady II and III, the court declined to impose a filing
> injunction at that time, but warned plaintiff not to "test the court's patience" by
> bringing another frivolous lawsuit. 'A litigious plaintiff pressing a frivolous claim
> can be extremely costly…and can waste an inordinate amount of court time, time
> that this court and the trial courts can ill afford to lose. Thus, when, as here, a
> litigant is abusing the judicial process by hagriding individuals solely out of ill
> will or spite, equity may enjoin such vexatious litigation.' (_Sassower v. Signorelli_,
> 99 AD2d 358, 359 (2nd Dept. 1984)). Justice Margaret Chan, _Brady v. New York
> County District Attorney General_, No. 154496/2015

61.     The libel continued when she stated the following:

> "Given plaintiff's pattern of vexatious conduct and repetitive litigation, including
> his penchant to inflict hagride on those who do not do is bidding, this court shall
> _sua sponte_ issue a protective order prohibiting plaintiff from initiating any further
> litigation as party plaintiff without prior approval of the Administrative Judge of
> the court in which he seeks to bring a further motion or commence an action, with
> the sole exception of appealing the instant Order." _Id._

62.     These are completely false claims by people instructed to be judges.

Plaintiff and his wife have suffered for years because of the abuse by members of the

judiciary, and the false statements that were never affirmed or reversed were

unconstitutional and the ultimate libel.

## THE FILING INJUNCTION PLACED ON PLAINTIFF BY JUSTICE CHAN HAS NEVER BEEN AFFIRMED BY ANY COURT AND HAS BEEN USED TO RETALIATE AGAINST PLAINTIFF, DENY ACCESS TO THE COURTS, AND OBSTRUCT JUSTICE

63.     As part of her retaliatory decision, Justice Chan issued a *sua sponte* filing

injunction that has already been used against Plaintiff to prevent him from having the

court adjudicate the issues of his case, and to deny him access to the court in an un-

related case.

64.     Justice Chan November 23, 2015 decision imposed a filing injunction:

"Given plaintiff's pattern of vexatious conduct and repetitive litigation, including his penchant to inflict hagride on those who do not do is bidding, this court shall *sua sponte* issue a protective order prohibiting plaintiff from initiating any further litigation as party plaintiff without prior approval of the Administrative Judge of the court in which he seeks to bring a further motion or commence an action, with the sole exception of appealing the instant Order." *Id.*

65.     This *sua sponte* filing injunction has been already been used to obstruct

justice.  When Plaintiff sought to have the court adjudicate the issue of which court

decision governs in the air rights case, Manhattan Supreme Court Administrative Judge

Deborah Kaplan used the filing injunction as an excuse to prevent the adjudication of the

issue in a clear and transparent part of a RICO scheme and to obstruct justice.

(Exhibit 8).

66.     As the decision shows, it is further prove of libel against Plaintiff.  And further proves the sua sponte filing injunction was meant to obstruct justice.  All the Plaintiff wanted was a Declaration of which decision governs, which can only be adjudicated in Plaintiff's favor.

67.     Administrative Judge Kaplan's March 8, 2018 denying Plaintiff the right to have the court adjudicate which decision governed states at the onset that Plaintiff "seeks permission by letter to this court dated March 6, 2018 to file a "proposed Complaint seeking Declaratory Relief pursuant to CPLR 3001."  Plaintiff was not seeking damages but a declaration of his rights.

**68.     This obstruction of justice further proves the need for a Declaration from this Court that the Offering Plan and February 11, 2010 Appellate Division, First Department decision govern over Supreme Court Justice Kornreich's July 15, 2014 decision.**

69.     Judge Kaplan denied the filing of the motion on the grounds that a declaratory judgment is discretionary and that Plaintiff had a filing injunction placed against him, using the broadest application of the injunction to obstruct the adjudication of the issue as part of the retaliatory RICO scheme.

**<u>DEFENDANTS KNEW THESE LIBELOUS ASSERTIONS WERE
COMPLETELY FALSE BASED ON THE STATEMENTS IN COURT OF THE
PARTIES TO THE CONTRACT AND OF JUSTICE SHIRELY KORNREICH</u>**

23

## The Parties to the Contract have Always Agreed on Its Meaning

70.    In court papers and at the March 18, 2014 Oral Arguments, (Exhibit 28) the parties to the contract have always agreed that the co-operative's air rights are appurtenant to Plaintiff's former 12th Floor and Roof Unit.  The court-created rewriting of Plaintiff's Offering Plan was a pre-condition to the court-created debt racketeering scheme in which Defendants participated.

71.    Defendants knew the statements in Justice Kornreich and Chan's decisions were libel, entirely retaliatory and meant to destroy Plaintiff by inserting lies and libel into the judicial record.

72.    In court papers, Franklin Snitow, Extell's litigation counsel, stated in his "Affirmation for Defendants Extell Dev. Corp.", et al., March 18, 2008, p. 2 ¶ 3, stated:

> The intent is evidenced in the decision of the original owner of the 12th floor unit to build an 1,800 square foot penthouse on the roof." **Thus, the intent of the Amendment is clear on its face."** (R: 310).

73.    Similarly, Stanley Kaufman, litigation attorney for the Co-op, stated in "Defendant's Reply Memorandum of Law," April 14, 2008, p.5,

> **The clear intent** was to grant the 12th floor unit owner some latitude in adding **additional space, or structures**, so long as in doing so, the owner did not violate the local building code, **zoning regulations, or other ordinances**.

## Joseph Augustine, Attorney for the Co-op, Gave the Same and Only Possible Interpretation of the Contract as the Other Parties at the March 18, 2014 Oral Arguments

THE COURT: -- which means you're going to have to commit the coop board to tell me: What does Paragraph 7 mean?

MR. AUGUSTINE: It means he has the right to build structures once he submits a plan. And if those structures are permissible by law, such as Department of Buildings, and those plans do not pose a structural risk or any other risk to the building in order to -- for him to service the space that he has there, then the board would be inclined to approve it.

THE COURT: But what I'm saying is he does have that right, though, under paragraph 7.

MR. AUGUSTINE: He has - - our understanding he has a right to build structures. That's what it says. No one disagrees. The courts all said the same thing; he has a right to build structures.

74.    Justice Kornreich's July 14, 2015 Decision which libeled Plaintiff also

included admissions that contradict those statements and prove Defendants knew Justice

Kornreich was committing a crime in rewriting Plaintiff's contract, libeling him, and

issuing $500,000 in sanctions:

"Strictly speaking, Brady is correct that the question of whether such an easement interferes with his right to build structures on the roof or otherwise permitted by applicable law has never been determined and so is not barred;" (July 15, 2014 decision, p.15); and

"Brady correctly notes" that the issue of whether the sale to Extell violated his rights was never reached, and that the issue of whether the sale of the air rights by 450 Owners Corp. to Sherwood violated Brady's rights could not have been reached in the prior actions."

## DEFENDANT JANET DIFIORE WAS AWARE OF THE CRIMES DETAILED IN THIS COMPLAINT SINCE AT LEAST 2013

75.    Defendant Janet DiFiore was Chairwoman of the New York Joint
Commission on Public Ethics from 2011 to 2013.  The Joint Commission included the
Moreland Commission, to which Plaintiff sent emails in 2013 informing them of the
crimes and seeking their help, which proves that Janet DiFiore was aware of the crimes
detailed in this Complaint as far back as 2013, three years before becoming a Court of
Appeals judge.

Jim Brady <bradyny@gmail.com>                    Mon, Dec 30, 2013 at 10:31
                                                                      AM
To: comments@moreland.ny.gov

Please confirm that the Moreland Commission on Public Corruption is
investigating my claim.

My charges are very serious and my evidence is overwhelming that 17 State
Justices acted with criminal intent when they rewrote the Offering Plan
description of my Unit so that the $100 million Dollars in development rights
that were appurtenant to my Unit could be seized and sold by the other
members of the co-op corporation

Thanks

James Brady

My email is bradyny@gmail.com

**"The Written Testimony Submitted on the Nomination of Janet DiFiore for Chief
Judge of the New York State Court of Appeals"
(Exhibit 9)**

76.    As part of the Public Record, Plaintiff submitted Public comments to the
Senate Judiciary Committee headed by John J. Bonacic asking the Committee to ask

Defendant Janet DiFiore about the rewriting of Plaintiff's Offering Plan contract by the

lower courts at her Confirmation Hearing on January 20, 2016.

January 19, 2016:

Dear Mr. Bonacic and other Members of the Senate Judiciary Committee,

For over 7 years I have suffered as the State of New York's Judicial employees
repeatedly rewrote or permitted other judicial employees to unlawfully rewrite the
Offering Plan contract description of my commercial apartment in the Hudson
Yards District of New York.

The unlawful rewritings of my contract were done in attempts to void the hundred
million dollars in air rights expressly and exclusively given to my commercial
apartment through the seventh paragraph footnote to the schedule of units in the
amended Offering Plan named 450 West 31st Street Owners Corp. The corruption
would not have continued a fraction as long but for the dishonesty and corruption
of the last chief justice Jonathan Lippman. I demand that the same type of
dishonesty and lack of integrity is not found in the next Chief Justice of the Court
of Appeals.

The unlawful rewritings of the contract description of my apartment were
blatantly corrupt and done of the benefit of rich and powerful deep-pocketed
developers. The blatant corruption by the State of New York's Judicial employees
was do to the fact that the States judicial employees were well aware that under
chief Justice Jonathan Lippmann corruption was permitted to go unchecked.

As page 2 of the attached Second Amendment shows, the one sentence provision
she must be asked to interpret is the 'Seventh Paragraph Footnote' to 'the
Schedule of Units,' which reads as follows:

'Seventh Paragraph – New – The 12th Floor and Roof Unit shall have, in
addition to the utilization of the roof, the right to construct or extend
structures on the roof, or above the same, to the extent that may from time
to time be permitted under applicable law.'

The Amended footnotes are attacked so Ms. DiFiore can see the whole
communication as well as its tone and intended purpose. It should be noted that
the second amendment to the Offering Plan was also the final amendment and the
final terms in which the sponsor would agree to declare the offering plan
effective. In the Offering Plan it was revealed that the sponsor Arthur Green was

27

keeping this apartment for himself. It was also reviewed that Mr. Green measured the lot and building down to the square foot. The building was reviewed to be 104,000 square feet in size. Thus according to the express terms of the offering plan any floor area ratio above the 104,000 utilized by the existing structure was to be conveyed to and reserved for the utilization of the 12th floor and roof unit.

Does Ms. DiFiore construe the Seventh Paragraph Footnote as giving permissible air rights "that may from time to time be given" to the premise's 12th Floor and Roof Unit for its exclusive utilization?

This is a Yes or No question. Former Chief Justice Jonathan Lippman and other justices of the Court of Appeals repeatedly refused to answer this Yes or No question because they knew the answer was "Yes."

In all, over 12 times I have been forced to fight for my rights as corrupt justices kept rewriting or permitting other justices to rewrite the contract description of my New York apartment in attempts to void my apartment rights. My pleads for help and justice were continually discarded in a word "denied" by Chief Justice Jonathan Lippman and the other justices under his control. It was not until a Supreme Court Justice Shirley Kornreich took out every word of the contract and replaced it with her own words in a July 15, 2014 Decision that the corrupt Justices were able to finally then claim that the intent of the seventh paragraph footnote to the schedule of units was not to convey air rights to my 12th Floor and Roof Unit.

The Appellate Division, First Department Justices, and the past and current justices of the Court of Appeals, are in on the fraud and collusion and have done nothing when shown that the contract description of my apartment was unlawfully rewritten to void the $100 million dollars worth of air rights that became appurtenant to my 12th Floor and roof Unit when the area was rezoned in 2005.

As my evidence proves, under Jonathan Lippman, the State of New York's Judicial employees were free to be as corrupt as they like without any fear of being held liable for their actions. Justices that make or permit knowing wrong decisions must be removed and Ms. DiFiore must swear to that she will do that if she is selected to be the Chief Justice of the State of New York.


**Defendant Janet DiFiore's Confirmation Hearing on January 20, 2016 Proves That Defendant Knew About the Crimes Being Committed Against Plaintiff Prior to Becoming Chief Justice of the Court of Appeals**

77.     Following the letter sent to Defendant through the office of Senator

Bonacic, the issue raised in Plaintiff's letter were not addressed at her January 20, 2016

Confirmation Hearing.  Defendant's husband told Plaintiff that Janet DiFiore was "On

it," which proves that Defendant was aware of fraud scheme being perpetuated against

Plaintiff prior to assuming her position in the Court of Appeals.

78.     The Senate judiciary Committee did not ask Defendant the question they

had a duty to ask as part of the Public Record, showing the complicity of its Members

and John J. Bonacic in cover-up this crime.


**"The Written Testimony Submitted on the Nomination of Michael J. Garcia for Associate Judge of the New York State Court of Appeals", February 5, 2016 (Exhibit 10)**

79.     As part of the Public Record, which all members of the Committee

received, Plaintiff submitted a Packet to the Senate Judiciary Committee headed John J.

Bonacic, which included a question for Mr. Garcia to explain the meaning of the

Seventh Paragraph Footnote.  Plaintiff also emailed his question to Mr. Garcia directly

to his law firm of Kirkland & Ellis.  The letter included the following:

Dear Mr. Garcia:

I am not necessarily opposed to your nomination, unless you are corrupt. Then I
oppose your nomination.

Your background includes being a prosecutor, so it would be impossible for you
to honestly claim you do not see that I was, and continue to be, the victim of
corruption by the employees and commission members of the State and City of
New York.

My claims involve an ongoing robbery and corruption scandal by the state of New York's judicial and law enforcement employees.

These criminals are armed with 1) extreme power, 2) immunity, and 3) a culture of corruption and collusion that virtually assures them they will never be held accountable for their criminal behavior as long as they stick together they can away with blatant criminal activity.

In my particular case, the goal of the state justices, law enforcement agencies, and the Commission on Judicial Conduct members is to make sure it is never investigated why the contract description of my commercial apartment was unlawfully rewritten to void the $100 million dollars worth of air rights that were appurtenant to my unit through the Offering Plan contract.

The rewritings were obviously unlawful since the Justices themselves determined that the contract was "not ambiguous" and the contract was to be enforced "as written".

Justice Kornreich of the Manhattan Supreme Court, Commercial Division, issued a July 15, 2014 decision in which she rewrote both the original contract and the Appellate Division's decision:

> "It has already been adjudged that while the owners of the unit may have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 & *4-*5."

There are three active cases in court on this matter at the time of this writing: Brady v. Schneiderman, No. 15 Civ 9141 in Federal District Court, Southern District of Manhattan, before Justice Abrams. The second case, Brady v. the Office of the New York Attorney General, Commission on Judicial Conduct, et al., Claim No. 126268, in the New York State Court of Claims.

The third case is before the New York Court of Appeals, James Brady v. 450 West Owners Corp., et al, No.157779/2013 and 654226/2013. This suit is against the co-op Board who sold the premise's development rights to Sherwood Equities in violation to the Offering Plan and the Appellate Division's February 11, 2010 decision.

You should be prepared to answer the following questions, as I have been assured that one of the Senators will be asking you about this.

What does the Seventh Paragraph Footnote means to you?
As a Justice of the Court of Appeals, will you permit the description of apartments to be rewritten, or will you enforce contracts as written?

Do you believe judges who make or permit knowingly false decisions be removed?

I look forward to your response and your implementation of justice in this matter.

Sincerely,
James H. Brady

## MICHAEL GARCIA'S FEBRUARY 8, 2016 CONFIRMATION HEARING SHOWS DEFENDANT ON VIDEO RUNNING OUT OF THE ROOM TO NOT ANSWER PLAINTIFF'S QUESTION

80.     At the Confirmation Hearing, Mr. Garcia expected to escape without having to answer Plaintiff's question or address the public corruption, just as Janet DiFiore had. The members of the Senate Judiciary Committee were required to ask the nominee the questions submitted by the public, which were part of the Public Record, but instead participated in the retaliatory cover-up.

81.     The transcript and video shows that Plaintiff asked Mr. Garcia, and then the video audio is lowered and nervous laughing, as if there were something humorous about Plaintiff's financial destruction.

## Transcript of February 8, 2016 Confirmation Hearing of Michael Garcia for Associate Judge of the Court of Appeals.  Starting at 38:20 to the end (Exhibit 11)

https://www.youtube.com/watch?v=AtmhWAKmEqw

Chairman John J. Bonacic:  Does anyone else have any questions for Mr. Garcia?
I'm hearing none.

Mr. Brady (off camera):  I do.  Mr. Garcia, would you please explain what
paragraph seven means to you...

Chairman:  No, no, no.  Mr. Brady, you're out of order.  You're out of order.  You
don't have to answer that.  I'd like to call a vote now.  All those in favor of Mr.
Garcia going to the floor for full confirmation say "Aye."  Anyone opposed?
Motion is passed.

Mr. Brady (off camera):  I can't breath; I can't breath...

Senator Ruth Hassell-Thompson:  Only we can ask questions.

Unintelligible.  Audio breaks off.

82.    The above transcript comes from the video taken on the day of the event as

seen on Plaintiff's whistle-blower website www.bullyjudges.com.

83.    The same day of the Confirmation Hearing, February 8, 2016, Plaintiff sent

Mr. Garcia a follow-up email that again shows that Defendants both knew of the crimes

being committed in the courts below and did nothing, took no action in the face of their

explicit duty to intervene and supervise the courts below them.

Subject: I still need Your interpretation of the Seventh Paragraph Footnote to the
Schedule of Units
To: <michael.garcia@kirkland.com>

Mr. Garcia

Congratulations today on your confirmation and escaping having to explain your
understanding of the Seventh paragraph Footnote to the Schedule of Units for 450

West 31st Street Owners Corp. One day in the near future a reporter will certainly be asking you that question so I would have an answer ready if I were you

It is my understanding that the tapes were cut to avoid showing how crazy things got when everyone wanted to make sure you would not give your interpretation of the Seventh paragraph footnote to the Schedule of Units. As you know, everyone did this because they all know that the Seventh paragraph footnote to the Schedule of Units can only be construed as giving what is now my 12th Floor and Roof Unit the express and exclusive utilization any permissible development rights that " may from time to time be given to the premises." It really was funny seeing all the Senators screaming for you not to answer my question and instead completely ignore me and rush to vote you in and then have everyone rush to run out of the room.

For sure I am acting as my own investigator and adding so many layers of evidence proving that even the Senate Judicial Committee is fully aiding and abetting fraud and obstruction justice.

I do hope for both of our sake and the sake of both of our families that you do follow through on your promise of being independent, just and truthful. Surely your children were very proud of you today. If I had to guess, you cast me as being a crazy person when they undoubtedly asked you about what happened when I asked you to explain what the ONE sentence long contract meant to you.

I doubt very much that you explained to them the truth that I suffered for years as justices kept rewriting or permitting other justices to rewrite my contract in attempts to void my contractual rights.

I won't stop till I get justice and it is my hope that you will be one of the people credited for that.

Sincerely,

James Brady

**Defendants' Response to Plaintiff's Pleas for Help In February 2016, When Marshall's Were Seeking to Collect on Unlawful Debt Proves Both Defendants Wanted Plaintiff to Lose His 12th Floor and Roof Unit Through Court-Created Debt Prior to and After Becoming Judges**

**(Exhibit 12)**

84.     On **February 24, 2016**, Plaintiff sent a letter two-page letter to Justices

DiFiore and Garcia, and a corrected version resent on February 26, 2016.

85.     The original February 24, 2016 letter and February 26, 2016 replacement

are key evidence that both Defendants were made fully aware of the injustice and abuse

Plaintiff suffered.  Paragraph two reads as follows:

> "As stated in the original letter, I am writing you respectfully demanding your
> immediate attention and assistance. During your confirmation hearings before the
> Judiciary Committee you both heard about the abuse I have endured for the
> past nine years as Judges in the State rewrote or permitted other justices to rewrite
> the contract description of my Unit in an attempt to void the development rights
> that belong to my unit through the Offering Plan.

86.     The letter continues:

> "I need you to sign an order immediately staying any enforcement actions until
> such time as this Court rules that Supreme Court Justice Shirley Kornreich had no
> right rewriting a higher court decision.  Justice Kornreich's July 15, 2014 Decision
> should be vacated in its entirety. This matter has already taken to long, and the full
> Court must rule on the underlying case before it."

87.     The second page of the letter read as follows:

> "At Mr. Garcia's confirmation hearing, I asked the new judge to tell me and the
> Senate Judiciary Committee what the seventh paragraph footnote meant to him.
> Immediately, there was chaos. The live broadcast of the hearing was shut off. I
> was screamed at by the chairman that I was "out of order" for asking the question,
> and everyone ran out of the room in seconds without the question being answered.
> The Chairman told Mr. Garcia that he did not need to answer the question.  The
> question needs to be answered now and I will not stop until it is answered."

88.     The letter also included the Canon of Law stating that:

"A judge who receives information indicating a substantial likelihood that another committed a substantial violation of this part shall take appropriate action."

89.     The letter ended with a plea for help:

**"As the enclosed 'Notice of Judgment Debtor' dated February 2, 2016 shows, Marshalls are set to confiscate my property.  Any delay in your protection will cause immediate and irreparable harm to my family and result in the seizure of my property."**

90.     **Defendants' February 26, 2016 Response** letter stated proves that Janet

DiFiore and Michael Garcia were already in on the scheme to destroy Plaintiff with

Illegal Debt that had been created by the Justices of the New York State Court System,

and were part of the conspiracy that denied Plaintiff his constitutional right to have his

case adjudicated.

91.     The Court of Appeals response states: (included as part of Exhibit 12):

February 26, 2016

Mr. James Brady
450 West 31st Street, 12th Floor
New York, NY  10001

Dear Mr. Brady:

 This acknowledges receipt of your letter dated February 24, 2016.  No action can be taken at the Court of Appeals on your letter.

        The Court of Appeals is a court of strictly limited appellate jurisdiction.  Its jurisdiction is specifically circumscribed by New York State constitutional and statutory provisions.  Neither the Court nor any of its judges can intervene in any matter not jurisdictionally before it pursuant to those provisions.  To the extent that your letter complains about a particular Supreme Court Justice, it is not a matter over which the Court has jurisdiction in the first instance.  The Court of Appeals has appellate jurisdiction with regard to certain determinations of the

State Commission on Judicial Conduct (see Judiciary Law 44[7]).

You may wish to direct your concerns to the New York State Commission on Judicial Conduct, 61 Broadway, Suite 1200, New York, New York 10006. You may also wish to direct your concerns to the Honorable Peter H. Moulton, Administrative Judge, Civil Matters, First Judicial District, 60 Centre Street, New York, New York 10007.

Very truly yours,

John P. Asiello

## Plaintiff Sent Defendants a Letter on February 28, 2016 Replying to Their Failure to Take Any Action in Plaintiff's Case

92.     Plaintiff's February 28, 2016 letter stated:

It is a disgrace that Mr. John Asiello send me this form letter saying that the Court of Appeals "is a court of strictly limited appellate jurisdiction." This excuse to do nothing will not cut it. You two have a duty to do something immediately about me being sanctioned $400,000 by a corrupt judge who rewrote a higher court decision voiding my rights. You do not have the discretion to turn a blind eye to corruption.

Corruption and collusion among judicial employees is certainly something the Chief Justice has a duty to address. Corrupt New York State judicial employees rewrote or permitted other employees to rewrite the contract description of my apartment in order to void its rights. As former prosecutors, the new justices of the Court of Appeals have a duty to take appropriate action. The simplest way for this Court to address this matter immediately is to rule on the current motion before the Court, where the issue is raised of whether Supreme Court Justice Kornreich had any right rewriting a higher court Appellate Division decision to void its rights. Case Nos. 654226/2013 and 157779/201.

**Defendants' March 29, 2016 Decision Denying Plaintiff's Motion for Clarification was a Deliberate Retaliation Against Plaintiff by Refusing to Declare February 11, 2010 Appellate First Department Decision Governs, which they had a Constitutional Duty to Adjudicate (Exhibit 12)**

93.    Defendants' **March 29, 2016 Decision** "Denied" Plaintiff's Motion seeking the court make a Declaration that the February 11, 2010 First Department Decision governs over the unlawful lower court July 15, 2014 Supreme Court Decision.

94.    This was a continuation of the corruption of the Jonathan Lippman court. The fact that Janet DiFiore and Michael Garcia refused to say which of the two decisions governs proves they are conspirators in the scheme that has unlawfully and unjustly replaced Plaintiff's contract and higher court decision with the lower court decision.

95.    Plaintiff went back to Defendants Janet DiFiore and Michael Garcia with a *Motion for Reargument and Demand for Clarification, dated* **April 4, 2016**. **(Exhibit 13)** demanding the Justices rule that the Appellate Division February 11, 2010 Decision governs over the lower Supreme Court July 15, 2014 Decision.

96.    Paragraph 14 of Plaintiff's *Motion* reads as follows:

"it is unfathomable that you would turn your backs to pleads for protection and justice. This Court did nothing when shown that Justice Kornreich lied in her decision. I went to this Court showing the most outrageous injustice I have suffered, and you did nothing about it."

97.    In paragraph 20 of the Motion, Plaintiff asks about when Michael Garcia

ran out of his Confirmation Hearing to avoid saying what the Seventh Paragraph

Footnote meant to him:

> "To an objective observer, it would appear that this Court is advancing the
> underlying fraud and deceit in this case.  This suspicion would become certain if
> this Court were to again answer with "Denied" as if the Court were untouchable
> and Plaintiff and his family were garbage.

98.    The final paragraph of the April 4, 2016 *Motion* reads:

> "Plaintiff attended the Senate Judiciary hearing of Janet DiFiore on January 20,
> 2016.  The issue Plaintiff raised were not addressed, which is very disappointing
> as I was told by Justice DiFiore's husband that the Court was on it. "On it" means
> using express language to admit the higher court decision governs and the lower
> court decision, and the sanctions it imposed are vacated.  So I am asking you as
> Chief Justice of the Court of Appeals what the Seventh Paragraph Footnote means
> to you because your current decision is ambiguous."

## April 5, 2016: Letter to Defendants and New York State Court of Appeals (Exhibit 13)

99.    On April 5, 2016, Plaintiff sent another letter complaint to the Court of

Appeals and stated the following (Exhibit 13):

> This is the sixteenth time I litigate the meaning of a one-sentence provision in a
> contract. The current decision of March 29, 2016 is another enigma from this
> Court. This is the Court's last opportunity to be just, follow state laws, and rule
> that the higher court decision governs over the lower court. Certainly, the federal
> courts will be able to answer the question of which decision governs if this Court
> will not.

## April 20, 2016: Letter to Defendants and New York State Court of Appeals (Exhibit 13)

100.    On April 20, 2016, Plaintiff sent the Court of Appeals and Defendants

specifically requesting them to address the crimes suffered by Plaintiff (Exhibit 13):

All this Court needs to do is answer a Yes or No question that can only be answered as Yes. Your March 29, 2016 Decision was completely wrong when it stated, "the motion for a stay of sanctions is academic." Enclosed is a copy of a notice that my property is about ready to be levied based on the sanctions that this Court knows are not even remotely warranted.

101.    Defendants' **June 9, 2016 Decision** (included as part of Exhibit 13) simply

denied Plaintiff's Leave to Appeal without explanation, and dismissed his Motion to

Stay "as academic." This was overt collusion and retaliation against Plaintiff.

## May 5, 2017: Letter to Defendants and New York State Court of Appeals (Exhibit 14)

102.    On May 5, 2017, Plaintiff again sent a letter to Justices DiFiore and Garcia

again demanding justice and an end to the conspiracy (Exhibit):

I was at your Senate Confirmation Hearing, and since the time that you became Chief Justice, you have permitted a number of very unjust things against me. For example you allowed a lower court decision to rewrite a higher court decision to void my rights, and did nothing when that judge sanctioned me $400,000 for doing nothing more than suing people who stole the rights the higher court said I had.

Your indifference when you saw Justice Kornreich rewrite my Offering Plan contract and the Appellate Division, February 11, 2010 Decision and then the outrageous and unlawful imposition of $400,000 in sanctions against me has been a cruel evasion of your responsibility. I have been the target of retaliation by certain Justices of the lower Courts, and the Court of Appeals is charged with supervising the lower courts.

But this Court under both Johnathan Lippman and so far under Hon. Janet DiFiore has followed the same path and refused to answer this question and resolve this case. Michael Garcia ran out of the room rather than answer the question.

"The question now for this Court of Appeals has become which decision governs, the higher Appellate Division, February 11, 2010 decision, or the July 15, 2014 rewriting of the higher court decision by Justice Kornreich. The two decisions say

39

two different things: one says the contract is a conveyance for the utilization of air rights; the other says I lose everything and I am sanctioned $400,000. You know which decision governs yet you have also refused to address the issue. Please answer this question for me. Which decision governs? It is one or the other. You should be able to answer that instantaneously."

103. Janet DiFiore refused to answer the "one or the other question" and Plaintiff lost everything as a result on September 5, 2018 when he was forced to sell his 12th Floor and Roof Unit Apartment to pay this court-created debt of over $500,000, and another court-created debt of $1.7 million dollars that would have not have occurred but for the State Justices' refusal to apply the law to the admitted facts of his cases.

**January 17, 2018 Oral Arguments NYS Appellate Division, First Department**

104. At the January 17, 2018 Oral Arguments, as shown on video on Plaintiff's website www.bullyjudges.com and on the court's website, the justices sat silent and refused to answer or address any of Plaintiff's questions regarding his case, intentionally refusing to adjudicate any issue or answer any of the questions Plaintiff presented them, including: "Why doesn't my contract mean what is says on its face? Why doesn't my contract mean what the parties to the contract agree it means? Why doesn't my contract mean the only thing that the words can be construed to mean? What line of reasoning or legal authority permitted Judge Kornreich to rewrite my contract to void its rights and to void the rights the Appellate Court said belonged to my 12th Floor and Roof Unit Apartment?"

105.    The Judges sat silent and would not answer these questions because no line

of reasoning or legal authority would permit a court to alter and forge a new contract

without the consent of the parties to the contract.

**On March 23, 2018 Plaintiff Sent the Original Floor plan to Defendants Proving**
**Conclusively with Department of Buildings Evidence that Judge Ostrager had**
**Railroaded Plaintiff into $1.7 Million of Unlawful Court-Created Unlawful Debt**
**(Exhibit 15)**

106.    The original floor plan included in this March 23, 2018 Letter was returned

to Plaintiff on November 5, 2018 (Exhibit 31 below), showing the contempt and

blatantness of Defendants in perpetuating their crimes, behaving with confidence in

continuing the practice under the Lippman Court knowing they would never be held

accountable.

> It is vital the judges of the Court of Appeals see this original documentary
> evidence in the above case.  This is not new evidence.  It is the *original* architect's
> floor plan, which shows that the jury charge in this case was factually incorrect.

> The floor plan proves Judge Ostrager's jury charge was completely wrong.  The
> Public Assembly permit for Defendant's 11[th] floor at 336 West 37[th] Street proves
> the Department of Building permitted totally different room configurations from
> those the Court used as part of its Jury Charge.  The permit is clearly labeled
> "Meeting Hall Use Group CoC Occupancy F-1b, Total Number of Persons: 240."

**April 9, 2018: Letter to Defendants and New York State Court of Appeals**
**(Exhibit 16)**

107.    On April 9, 2018, Plaintiff sent a 3 page complaint to the Justices of the

Court of Appeals. The letter stated as follows:

This Court is currently deciding the appeal of the above case, and so the March 28, 2018 letter to Judge Ostrager (Exhibit A) and his reply (Exhibit B) are new and indisputable evidence that mandate reversal of the Jury Verdict and a new trial. Alternatively, the Court can use the existing Record to find in favor Defendant in all his claims.

The letter included the original, full-scale floor plan for the 11th floor event space. This is one of the actual Department of Building's approved floor plans that was seen by the Department of Buildings, the NYPD and the Fire Department each time they walked into one of the event spaces to perform inspections. An original, full-scale floor plan like the one shown to Judge Ostrager is included in my Record on Appeal to this Court.

The March 30, 2018 email from Judge Ostrager's Secretary proves conclusively that the Jury Verdict in this case must be reversed:

"The Court reviewed your letter.  There is no procedure for the Judge to contact the Court of Appeals."

The floor plan proves conclusively the jury charge was entirely wrong. The Public Assembly permit for the corporate tenant's 11th floor at 336 West 37th Street shows the Department of Building permitted totally different room configurations from those judge Ostrager used as part of its Jury Charge. The permit is clearly labeled "Meeting Hall Use Group CoC Occupancy F-1b, Total Number of Persons: 240." The original floor plan showed dozens of tables and chairs facing in multiple directions. (Exhibit C).

The $1.5 million judgment against me and in favor of the Landlord stems exclusively from a jury charge that is incontrovertibly proven to be incorrect.

## Plaintiff's April 10, 2018 Joint Reply to Defendant-Respondent DANY and NYAG and the June 12, 2018 Decision Issued by Defendants Proves their Retaliation and Participation in this Fraud Scheme by Intentionally Refusing to Adjudicate Plaintiff's Claims (Exhibit 17)

Respondents' respective Opposition Memoranda of Law prove City and State employees are actively participating right now in the criminal scheme to make sure no one is ever held responsible for the development rights that were unlawfully stolen from the Brady's 12th Floor and Roof Unit apartment.

The opposition papers prove City and State employees are continuing in the scheme right now as they litigate these cases. Although all 40 words in their Offering Plan Contract were unlawfully tampered with and replaced with 70 different words that voided the $70-90 million in development rights that were appurtenant to their 12th Floor and Roof Unit apartment, the Office of the Attorney General and the Office of the Manhattan District Attorney are telling this Court that "Brady's unfounded complaints to it do not justify investigation." (AG p.7).

108.   Concluded with what Plaintiff was asking from the court:

No immunity permits this Court to ignore the crimes and constitutional violations that are being inflicted on me now by New York City and New York State employees. This case is a public corruption scandal involving Honest Services Fraud, where State judicial employees engaged in "official acts" to steal $70 million worth of development rights that all parties to the contract agree were appurtenant to my 12th Floor and Roof Unit.

The Court must reverse the slanderous claims made by Justice Chan as this was done in order to make it impossible for me to find relief through the courts and is part of the same Honest Services Fraud scheme. Similarly, the filing injunction imposed against me must be lifted as it is an unconstitutional violation of my right to due process and is further meant to foreclose any relief and vindication of my rights.

**109.**   On **June 12, 2018**, Defendants issued the cruel and grossly unjust decision that simply stated the motion was denied, plus $100 in court costs, denied without explanation or any mention of the evidence contained in the appeal. Defendants allowed the libelous statements to remain in the court decisions, and allowed the filing injunction to stay in place to prevent Plaintiff from seeking any further redress from the courts.

**May 4, 2018: Letter to Defendants and New York State Court of Appeals (Exhibit 18)**

110.    On May 4, 2018, Plaintiff sent a 4 page complaint to Chief Justice DiFiore

and Michael Garcia with the following:

> This letter is not a motion. It is a demand that you two address a criminal scheme that is going on in your Court. I am addressing you both as former prosecutors. There is a big fraud scheme to replace a February 11, 2010 Appellate Division, First Department decision (Exhibit A) with a July 15, 2015 decision from the lower court of Justice Kornreich (Exhibit B). The February 11, 2010 Appellate Decision gives me the right to build structures that can be built with and without the usage of the premise's development rights. Specifically, the decision correctly states that the Co-Op owns the development rights, which was never in dispute, but that pursuant to the Seventh Paragraph Footnote to the Schedule of Units, the premises air rights are appurtenant to my Unit to the extent that may from time to time be permitted under applicable law.

> In 2013, I returned to the Appellate Division for Clarification of their decision. The words used in the could only be construed as giving my apartment the right to have the premise's development rights, in addition to the right to build structures without the use of the development rights. The Co-op opposed clarification because they knew the decision could only be squared against them. The Appellate Division refused to explain the anomaly created by their decision. The Appellate Division needed to come out and say the February 11, 2010 decision does not convey ownership of the premise's air rights but it conveys the right to the utilization of the premise's air rights. The judges of the Appellate Division refused to answer whether the Co-op's subsequent sale of the air rights to Sherwood Equities violated the rights given me pursuant to the affirmed February 11, 2010 decision. They would not answer this question because the answer is Yes, of course. The May 4, 2018 complaint requested that the justices consider the following exchanges between Justice Kornreich and various defense counsels at the March 18, 2014 oral arguments showing the decision are contradictory.

111.    The May 4, 2018 complaint concluded with the following:

These corrupt court decisions responsible for the seizure of my property have also slandered me in official court documents. I am not going to end this 11 year battle by being slandered by judges in court decisions. You must address this

issue immediately. I need you to reply to this letter no later than Monday, May 14, 2018, stating that the February 11, 2010 decision gives my12th Floor and Roof Unit the right to build structures on above above the roof with and without the usage of the premise's development rights. You also need to state by that date that the February 11, 2010 decision governs, and that my rights were violated by the unlawful sale of the premise's development rights.

## Defendants' Response to Plaintiff's May 4, 2018 Shows Defendants Acted with Criminal Intent and as Part of a Conspiracy

112.   Defendant's replied to Plaintiff's letter on May 8, 2018.  The letter shows

the court refusing to answer the question as to which court decision governs in the case,

and with criminal intent meant to harm Plaintiff, Defendants further state that "because

no action can be taken on your letter, I return the same enclosed."

May 8, 2018

Mr. James Brady
450 West 31st Street, 12th Floor
New York, NY  10001

Dear Mr. Brady:
        Your letter dated May 4, 2018 has been referred to me for acknowledgment and response.

        The Court of Appeals is a court of strictly limited appellate jurisdiction.  Its jurisdiction is specifically circumscribed by New York State constitutional and statutory provisions.  Neither the Court nor any of its Judges can intervene in any matter not jurisdictionally before it pursuant to those provisions, nor can the Court or its Judges explain or clarify the decisions of other courts as you request.

        Because no action can be taken on your letter, I return the same enclosed.

Very truly yours,

John P. Asiello

**Plaintiff's May 22, 2018 and June 6, 2018 Letters to Defendants and Their Reply Received Shows Further Retaliation as Part of the Ongoing Civil RICO Scheme (Exhibit 19)**

113.   Plaintiff's letter included the following:

Currently, I have a $470,000 judgment against me because this court and the lower courts won't say that the higher court decision governs.

I currently have a $1.5 million judgment against me in the *IGS Realty Co., LP v. James H. Brady., Index NO. 603561/2009* case because this court and the lower courts won't say that the merger clause of the lease was broken, when the landlord changed "as is" condition of the building and making it an illegal office building after the leases were signed.

I need you to do 3 things right now:

1)  Acknowledge that the February 11, 2010 decision governs over the Supreme Court July 15, 2014 decision, or tell me who can.

2)  Stop the retaliation scandals going in the Appellate Division, First Department and have them make a decision that the merger clause "as is" condition was broken and the guarantees are void.

3)  Grant me the new trial I have asked for so my counterclaims against the landlord can be tried in front of a fair and impartial justice, since the previous judge admittedly schemed against me and gave false jury instructions of which the $1.5 million judgment is predicated.

**June 6, 2018: Letter to Defendants and New York State Court of Appeals (Exhibit 19)**

114.   On June 6, 2018, Plaintiff sent another Letter to Chief Justice DiFiore with

a copy of letter that was sent to the Appellate Division First Department a day earlier:

Re: *The Retaliation Scandals that you have condoned as Chief Judge of the New York State Unified Court System*

Dear Justice DiFiore,

46

I am sending you a copy of a letter that was sent to the Appellate Division First Department on June 5, 2018. Your immediate action is required under the Canons of Law that govern your behavior, and because as Chief Judge you're responsible for the actions of all the justices below you. You need to take immediate action to make sure that these justices listed in the letter do not participate in another retaliation scheme against me. Any decision they make will be construed as being made with your blessing.

**Defendants' Response to Plaintiff's May 22, 2018 and June 6, 2018 Letters were Answered Together in a Letter from the Court of Appeals on July 5, 2018 (Exhibit 19)**

July 5, 2018
James H. Brady
510 Sicomac Avenue
Wyckoff, NJ 07481

      Re:     IGS Realty Co. v Brady
            Mo. No. 2018-603

Dear Mr. Brady:

Your letters dated May 22, 2018 and June 6, 2018 have been referred to me for acknowledgment and response.

To the extent your letters relate to your pending motion for reargument in the above-titled matter, which bears index no. 605661/2009, your letters will be submitted to the Court pursuant to Court of Appeals Rules of Practice section 500.7 for such consideration as the Court determines to be appropriate. No proof of service was located with your letters. Accordingly, a copy of each is forwarded to opposing counsel herewith. You will be notified by mail when the Court makes a decision on that motion.

To the extent your letters pertain to a matter bearing index no. 159554/2017, please be advised that the Court of Appeals is a court of strictly limited appellate jurisdiction, and neither the Court nor any of its Judges can intercede on your behalf in any matter not jurisdictionally before the Court pursuant to the relevant constitutional and statutory provisions. If you wish to

seek appellate review of a Supreme Court order, you must take action pursuant to relevant statutory provisions to initiate an appeal (see e.g. CPLR 5701). If you wish to seek review by the Court of Appeals of An Appellate Division order, you must either serve and file a notice of appeal (see CPLR 5601; CPLR 5515) or serve and file motion papers complying with the Court's Rules of Practice (see CPLR 5602; Rule 500.21; Rule 500.22).

Very truly yours,
John P. Asiello


## June 8, 2018: State of New York Court of Appeals, Chief Justice DiFiore and Justice Garcia (Exhibit 20)

115.   On June 8, 2018, Plaintiff sent a 2 page Letter to Chief Justice DiFiore and

Justice Garcia.

You and this court must act today and protect my wife Jane Brady and I from a crime that is being committed right now.

Specifically James and Jane Brady's commercial co-op apartment is being seized and sold at public action because a jury was told that "under the law" only one floor plan was legally permitted for meeting hall use and that otherwise personal guarantor James H. Brady (not a tenant or party to the contract personally) broke the contract and owed the Landlord what is now over a $1.5 million dollar judgment.

116.   The letter concluded:

In your possession and care is the original stamped approved plans from the Department of Buildings proving the claim was totally false. The judgment was based solely on this false claim. You need to look at the approved floor plan right now since it proves the claim was totally false. The approved plans are also slower on the Record of case that is in your possession. The original floor plan, which was shown to Judge Ostrager numerous times and to the Appellate Division shows the complete opposite of the definition given the Jury by judge Ostrager. The original floor plan that was approved by the Department of Buildings shows dozens of tables with people facing in multiple directions with no common focal point. Judge Ostrager and the Appellate Division Judges completely ignored this evidence.

**June 13, 2018: Letter to Defendants and New York State Court of Appeals (Exhibit 21)**

117.    On June 13, 2018, Plaintiff sent a letter-complaint to Chief Justice Difiore

with the following justice departments cc'd: FBI New York; United States Senate; U.S.

Department of Justice Public Integrity Unit; U.S. Department of Justice Criminal

Division, OCGS; Office of the Attorney General Public Integrity Bureau; United States

Attorney's Office Public Corruption Unit; Commission of Judicial Conduct; Manhattan

Attorney's District Office; New York Court of Appeals; Public Integrity Bureau.

Please find a letter written and e-filed to New York Supreme Court Judge Barry
Ostrager on May 31, 2018. Judge Ostrager does not dispute any of the charges in
this letter, and therefore your immediate intervention is required. Specifically,
Judge Ostrager does not dispute that he participated in a criminal and retaliatory
scheme against me, which got him immediately promoted as a brand new judge
to the prestigious Commercial Division of the Manhattan Supreme Court. In the
letter, the last paragraph reads as follows:

> The only explanation for your conduct at the trial and refusal to fix the false
> jury charge that leads to a $1.5 million dollar judgment against me is the
> fact that it was getting this cruel, unjust decision against me got you
> promoted to a Commercial Division Judge. There are no other explanations
> that exist for your actions, and if there is then explain it by June 7, 2018 in a
> letter that I can share with the law enforcement agencies investigating this
> matter.

The fact that Judge Ostrager did not dispute any of these very serious charges
against him proves Judge Ostrager conceded the charges to be true. Again I
stress that you need to take immediate action, which would start with vacating
the $1.5 million dollar judgment against me and ruling in my favor on my
counterclaims that are currently before your court. I am enclosing a copy of this
letter to the parties listed below.

118.   Defendants knew they were free to be as corrupt as they like knowing the watchdog agencies would do nothing about it.  Plaintiff sent many other complaints and letters to the parties copied in these emails and they did nothing to stop or address the crimes detailed therein.

## June 15, 2018: Letter to Defendants and New York State Court of Appeals (Exhibit 22)

119.   On June 15, 2018, Plaintiff sent a Letter to Chief Justice DiFiore with the following justice departments cc'd: FBI New York; United States Senate; U.S. Department of Justice Public Integrity Unit; U.S. Department of Justice Criminal Division, OCGS; Office of the Attorney General Public Integrity Bureau; United States Attorney's Office Public Corruption Unit.  The letter stated the following:

> Currently before the court is a re-argument motion in the case of *IGS Realty Co., LP v. James H. Brady*, Index No. 603561/2009. The enclosed email proves that this court must stay this turnover order and/or rule on this case immediately but no later than Friday, June 22, 2018.

> There is nothing that needs to be contemplated by this Court since it was already proven and is undisputed by Supreme Court Judge Barry Ostrager that the judgment was based solely on a single surprise and admittedly false jury charge made by Judge Ostrager on June 26, 2015. Specifically, this court already knows the claim on which this $1.5 million dollar judgment is based, was proven false.

> The judgment was based solely on the false claim that unless James H. Brady's Meeting Hall leases followed one certain floor plan and unless the patron's acted in a certain way that they needed to rule that James H. Brady personally as guarantor broke the contract and owed what is now over a $1.5 million dollar judgment.

**June 20, 2018 Reargument to Court of Appeals "Appellant Affidavit in Support of Motion for Reargument" Shows That Defendants Ignored All Law and Precedent in Retaliating Against Plaintiff (Exhibit 23)**

120.    Important selections of Plaintiff's Affidavit included the following:

Justice Chan's decision outrageously and unlawfully used the power of the court to defame and slander Appellant, imposing a filing injunction, and making it near impossible for Appellant to seek further redress in the courts:

> "During motion practice in Brady II and III, the court declined to impose a filing injunction at that time, but warned plaintiff not to "test the court's patience" by bringing another frivolous lawsuit. 'A litigious plaintiff pressing a frivolous claim can be extremely costly…and can waste an inordinate amount of court time, time that this court and the trial courts can ill afford to lose.  Thus, when, as here, a litigant is abusing the judicial process by hagriding individuals solely out of ill will or spite, equity may enjoin such vexatious litigation.' (*Sassower v. Signorelli*, 99 AD2d 358, 359 (2nd Dept. 1984)).

> "Given plaintiff's pattern of vexatious conduct and repetitive litigation, including his penchant to inflict hagride on those who do not do is bidding, this court shall *sua sponte* issue a protective order prohibiting plaintiff from initiating any further litigation as party plaintiff without prior approval of the Administrative Judge of the court in which he seeks to bring a further motion or commence an action, with the sole exception of appealing the instant Order." *Brady v. New York County District Attorney General*, No. 154496/2015.

121.    The Motion included the following:

The November 23, 2015 Decision shows Margaret Chan: 1) lying about the case history; 2) advancing the personal attacks on James H. Brady to a whole new level of defamation; 3) acting as if the $470,000 were well deserved against James H. Brady; and 4) implementing a broad filing injunction as a way of retaliating

against James H. Brady and to obstruct justice and make sure no one is ever held accountable for their part in this massive public corruption scandal.

In her Decision Judge Chan says the filing injunction was to protect people from James H. Brady. The truth is was James H. Brady who needed protection from the New York State and New York City employees and Commission members who colluded in this criminal scheme. Every single word in Justice Chan's decision is incorrect. She gives the same erroneous case history as Defendants, asserting that Brady had lost the prior litigation and that the Appellate Division affirmed that decision, both of which are untrue:

> In the 2008 action (Brady I) another Justice of this Court found that the cooperative, not plaintiff and his wife, was the exclusive owner of the building's "transferrable development rights" (TDRs) (see *Brady v. 450 West 31st Owners Corp.*, 2009 NY Slip Op 30599). The decision was affirmed by the Appellate Division (see *Brady v. 450 West 31st Owners Corp.*, 70 AD3d 469 (1st Dept. 2010)), and plaintiff's motion for leave to appeal to the Court of Appeals was "denied with one hundred dollars costs and ...disbursements (see *Brady v. 450 West 31st Owners Corp.*, 15 NY3d 710 (2010).

In the first round of litigation (Brady 1) the charges that my claims "lacked any substance;" "were meritless;" and "were frivolous" were never made. These false claims were first made by Justices Kornreich in her July 15,2014 decision, and then advanced by this court in it's November 23, 2015 Decision. As the victim of a crime, I never should have been subjected to such untrue, slanderous verbal abuse. It is interesting that the two judges calling me these slanderous words refuse to sign subpoenas so the sponsor of the Offering Plan, Arthur Greene, could testify that the intent of the Seventh Paragraph Footnote was to grant my Unit the exclusive utilization of the premise's development rights.

122.    The conclusion to Plaintiff's Motion to the Court of Appeals stated the
following:

> The Court of Appeals is responsible for so much of the pain and suffering
> inflicted on the Brady's:
>
> A) Since 2010 the New York Court of Appeals has refuse to answer the yes
> or no question as to whether the Seventh Paragraph Footnote should be
> construed as giving air rights to the Brady's 12th floor and Roof Unit
> Apartment.
>
> B) Since 2014 the Court of Appeals has permitted the lower July 15, 2014
> Decision to unlawfully replace the higher court Appellate Division First
> Department February 11, 2010 Decision.
>
> C) The 2014 the Court of Appeals was shown the unlawful writing of the
> contract and the higher court Decision but has done nothing to protect the
> Brady's property rights from being stolen.
>
> D) Since 2014 this Court has done nothing to protect the Brady's from the
> $470,000.00 in sanctions although this court knows the sanctions were
> unconstitutional and imposed with criminal intent.
>
> This Court must now rectify its previous inactions and half-measures and
> grant Reargument in this and the related case against Cyrus Vance and
> DANY's Office.  Both cases were dismissed with pre-Answer motions to
> dismiss and without any documentary evidence or supporting affidavits
> from anyone except the attorneys themselves.  Neither the Supreme Court
> nor the First Department addressed the crime that took place which is the
> genesis of these cases, and neither court addressed any of the Constitutional
> issues underlying Defendants complicity in this fraud scheme.

**WHEREFORE**, for the reasons stated, I plead with the Court to grant Reargument, or alternatively grant leave to appeal to the Court of Appeals, and any other relief this Court deems just and proper.

## July 20, 2018: Letter to Defendants and New York State Court of Appeals (Exhibit 24)

123.   On July 20, 2018, Plaintiff sent a 2 page Letter to Chief Justice DiFiore.

The complaint opened up as follows:

You as Chief Justice have been specifically told in multiple letters about what occurred in the case of IGS Realty Co., LP v. James H. Brady, No. 603561/2009.

This Court must review the Oral Argument transcript of May 16, 2018 (starting at 25:00 mins.) that proves I have been singled out for retaliation, and also proves the validity of my claims. The First Department did something to me they have never done to another litigant: the Justices did not ask a single question and sat silent as I demanded they do their job and apply the law to the admitted facts.

The June 7, 2018 decision shows they refused to apply the law and affirmed Judge Ostrager's April 7, 2017 decision where the court admittedly states he is ignoring my Opposition papers, which included the case law and reasons why the guarantees are voided. With interest and attorneys' fees, the judgment is now $1.6 million dollars, which would wipe out my life's savings and be a travesty of justice.

IGS Realty knows they are not entitled to a penny of that based on their own unlawful actions that destroyed my businesses. That is why IGS offered $50,000 at the start of the June 23, 2015 trial. This matter does not and cannot wait for review, and there is nothing to debate between the Justices of this Court. Everyone knows the guarantees were voided when the Merger Clause was broken by the Landlord's illegal actions.

## August 15, 2018: Letter to Defendants and New York State Court of Appeals

**(Exhibit 25)**

124.   On August 15, 2018, Plaintiff sent a very detailed email and Letter to Chief

Justice DiFiore and Justice Michael J. Garcia that provided specific elements and details

of the crimes being committed against Plaintiff:

Dear Chief Judge Janet DiFiore and Judge Michael Garcia:

I need you to address the issues in this complaint-letter because if they are not addressed before September 5, 2018, I will be forced to pay $2.3 million on that date due to the unlawful and unconstitutional actions of certain Supreme Court judges and Appellate Division, First Department Justices.  The matters in this Complaint need to be addressed immediately.

I have two matters that need your immediate attention. You have already ignored over a dozen letters that have been sent to you, and that must stop now. You are both former prosecutors and on September 5, 2018 I will be forced to pay $2.3 million dollars because of the corruption and retaliation schemes of Supreme Court Judge Shirley Kornreich, Supreme Court Judge Barry Ostrager, and certain New York Appellate Division First Department Justices.

The first crime pertains to the criminal scheme to replace my offering plan contract and a higher February 11, 2010 Appellate Division First Department decision with Supreme Court Justice Shirley Kornreich's July 15, 2014 decision which voided the rights these pieces of material evidence proved were appurtenant to my apartment, and her decision issued $500,000 in sanctions that I'm forced to pay on September 5, 2018 if this scandal is not stopped.

The second retaliation scandal is forcing me to pay $1.7 million dollar judgment against me because Supreme Court Judge Barry Ostrager and the Appellate Division First Department Justices refuse to apply this court's binding law that voided the Personal Guarantees as a matter of law and public policy, because the landlord increased and changed the risk after the Personal Guarantees were signed, by turning his garment factory building into an illegal office building that destroyed the certificate of occupancy after the leases were signed. The retaliation scheme is clear as day when you review the Oral Argument Archives on the Appellate Division's website for May 16, 2018 starting at 25 minutes. The video proves these justices colluded in a scheme to sit silent and not ask or answer a

single question, and they refuse to apply the law that voids Personal Guarantees to the facts.

125. The August 15, 2018 Letter concluded with the following:

The best proof of their misconduct can be seen looking at the Oral Argument Archives on the Appellate Division website for the date of May 16, 2018. This transcript shows them sitting in complete silence and refusing to ask or answer a single question and refused to address the admitted and obvious fact that the merger clause was broken and the guarantees were voided (at 25 minutes in):

http://wowza.nycourts.gov/vod/vod.php?source=ad1&video=AD1_Archive_May 16_13-58-05.mp4

This court must make a decision no later than June 22, 2018 to stop this admitted criminal act that was facilitated by Judge Ostrager or advance the crime.

## August 28, 2018 Letter to Chief Judge DiFiore and Justice Garcia (Exhibit 26)

126. Plaintiff's August 28, 2018 letter reiterated that Plaintiff's commercial co-op apartment was about to be auctioned off due to the unlawful court-created debt Defendants had allowed. Defendants in the same pattern ignored the letter.

The Justices are again being warned that they must stop the criminal scheme of replacing my offering plan contract and higher court February 11, 2010 decision with the lower court decision from July 15, 2014 that voids the rights my material evidence proved belong to my 12th Floor and Roof Unit.

This is a crime in progress, and you have a duty to act immediately and stop ignoring my repeated pleas for help.

## On August 29, 2018, Plaintiff Was Not Allowed to File a Criminal Complaint Against Defendants in Albany

127. On August 29, 2018 Plaintiff and his wife went to Albany in an attempt to have Defendants adjudicate his case and to file a criminal complaint with certain law enforcement agencies. He was stymied and prevent from doing either.

128. When Plaintiff tried to speak to them, Defendants completely ignored him although they know who Mr. and Mrs. Brady were, and the court had a very low caseload although they were practically the only people in the room.

129. Defendants returned to Chambers ignoring Plaintiff and in blatant retaliation, on August 30, 2018, Defendants and the Court of Appeals denied all of Plaintiff's Motions before the court. **(Exhibit 27)**. Defendants continued the same pattern of denying the motions without of word of explanation or justification.

130. After leaving the Court of Appeals, there is a good chance that the Investigator at the Office of The Attorney General contacted Defendants letting them know that after leaving the courthouse, Plaintiff and his wife went to the Albany Office of the United States Attorney for the State of New York to attempt to file a criminal complaint.

131. Mr. Paurowshi and another Investigator they said was named Sam Scolellano refused to permit Plaintiff and his wife from filing a complaint about the abuse of power and unconstitutional acts in the DiFiore Court of Appeals. Instead, he was trying to secretly use his cell phone to film Plaintiff and his wife.

132.   Plaintiff and his wife then proceeded to the Albany Office of the United

States Attorney. At that Office Plaintiff and his wife met with attorney Cyrus Rieck. Mr.

Rieck also refused to permit the Plaintiff and his wife to file a complaint or seek

protection from the unlawful court created debt what was about to force the sale of

Plaintiffs 12th Floor and Roof Unit Apartment

133.   Plaintiff attempted to file a complaint with the New York State Attorney

General and the U.S. Attorney for the Southern Distinct of New York but was not

allowed to by these agencies, which is a clear violation of Plaintiff's First Amendment

right.

134.   "It is axiomatic that filing a criminal complaint with law enforcement

officials constitutes an exercise of the First Amendment right to petition government for

the redress of grievances." *Lott v. Andrews Ctr.*, 259 F.Supp.2d 564, 568

(E.D.Tex.2003). "The rights to complain to public officials and to seek administrative

and judicial relief are protected by the First Amendment." *Jackson v. N.Y. State*, 381

F.Supp.2d 80, 89 (N.D.N.Y.2005).  "Undoubtedly, Plaintiffs are correct when they state

that they have a First Amendment right to file complaints with the government." *Hogan*

*v. County of Lewis*, 929 F.Supp 2d 130 (District Court ND NY 2013).


**The Defendants Ignored My Last Pleads for Help**

135.   The September 3, 2018 Email was sent two days before Plaintiff was forced

to sell his unit to pay over $2.5 million to the billionaires and politically-connected

parties who seized his property rights and was Plaintiff's desperate plea for help as the

victim of a crime **(Exhibit 28)**.   The email opened:

> From: Jim Brady <bradyny@gmail.com>
> Date: Mon, Sep 3, 2018 at 10:25 PM
> Subject: Re: A Crime that must be dealt with before September 5, 2018
> To: <jdifiore@nycourts.gov>, <mgarcia@nycourts.gov>,
> <rwilson@nycourts.gov>, <efahey@nycourts.com>, <jrivera@nycourts.com>,
> <lstein@newyorkcourts.com>, <pfeinman@newyorkcourts.com>,
> <ekrasnow@law.nyc.gov>, David Lawrence III <David.Lawrence@ag.ny.gov>,
> <cjc@cjc.ny.gov>, <zcarter@law.nyc.gov>, David McCraw
> <mccraw@nytimes.com>, <katebolger@dwt.com>, Ronan Farrow
> <ronan.farrow@gmail.com>, <newyork@fbi.gov>
>
>
> Dear Judges of The Court of Appeals, FBI, Assistant Manhattan District
> Attorneys, Assistant New York Attorney Generals and Commission on
> Judicial Conduct Members.
>
> No one has discharged their duty yet to protect me from the crimes that I have
> proven and that are meant to destroy me on September 5, 2018, unless someone
> stops these crimes. The crimes were detailed in my August 30, 2018 email that
> included an August 15, 2018 letter to the Court of Appeals.

136.   The email letter included the attachment of the March 18, 2014 Oral

Argument before Justice Shirley Kornreich, which shows all of the same attorneys

admitting one after another that the premises air rights were appurtenant to the Plaintiff's

unit pursuant to the Offering plan and certain words used in February 11, 2010,

Appellate Division, First Department Decision.

137.   On September 11, 2018, Plaintiff sent an Email to Janet DiFiore and Michael J. Garcia Along with Plaintiff's Motion for Reargument, dated September 7, 2018 **(Exhibit 29)**.  The letter reiterated that:

> As a result of these Court's refusal to apply binding law and precedent that voided the Personal Guarantees, my wife and I lost our lives' savings in September 5, 2018 by having to sell our commercial co-op apartment.

> Through my letters to you, I pleaded that you stop this retaliation that I am being subjected to under color of law.  So far my pleas for help have fallen on deaf ears, which make you culpable.

138.   Plaintiff's Reply Brief of October 2, 2018, along with Defendant's October 23, 2018 Decision Denying the Motion, shows defendants are entrenched in this Fraud Scheme and have no fear of consequences as they know the watchdog agencies and law enforcement will do nothing to stop them. **(Exhibit 30).**

**On November 6, 2018, Defendants Returned the Original DOB Floor plan to Plaintiff, Showing the Contempt and Cruelty, and Brazenness of Their Crimes (Exhibit 31)**

139.   In a November 5, 2018 Letter from the Court of Appeals contemptuously returned the Original Floor for Plaintiffs Meeting Halls that proved the Jury Charge that led to a $1.7 million dollar Judgment was totally false. The letter stated:

> The above motion was decided on October 23, 2018. Please find the papers you requested returned to you.

140.   This was a cruel message Defendants were sending that they had crushed

Plaintiff with their RICO conspiracy and would remain immune from accountability

because of the corruption of the courts under Defendants' supervision.

**Defendant Janet DiFiore Knew About the Crimes Detailed in this Complaint as Far
Back as 2013 When Plaintiff First Contacted Her Directly
Exhibit 32**

141.   Just as Plaintiff had contacted Defendant Janet DiFiore in 2013 through

email, he also sent her a letter on December 17, 2013 proving Janet DiFiore was in on

this RICO scheme as far back as 2013.

142.   The letter goes into great detail about the corruption of Justice Roland

Accosta, who was constantly retaliating against Plaintiff for exposing his crimes on

Plaintiff's website bullyjudges.com.  Governor Cuomo rewarded Acosta immediately

after his outrageously corrupt April 13, 2017 decision against Plaintiff in which the

unconstitutional acts of Justice Barry Ostrager were ignored.  This was the same corrupt

decision that led Justice Sheila Abdus-Salaam to kill herself because she knew she

would be expected to go along with the RICO retaliation when Plaintiff would then

appeal to the Court of Appeals.

**The June 7, 2018 Appellate Division Decision *Fairmont Tenants Corp v. Michael
Braff* Proves That an Offering Plan is the Controlling Document and the
Absolutely Absence of Any Equal Protection Under The Law in the Courts Under
Defendants Supervision (Exhibit 33)**

143.   The Appellate Division case *Fairmont Tenants v. Braff* show that Defendants perfectly understood that the law was not being applied equally in the courts, and that Plaintiff's Offering Plan had been rewritten in order to void the rights appurtenant to Plaintiff's commercial co-operative Unit.

144.   In *Fairmont Tenants v. Braff*, (2018 NY Slip Op 04083), the Appellate Division affirmed that an Offering Plan is the controlling document in any co-operative case. "The offering plan is the 'controlling document' that gives the proprietary lease meaning," *Fairmont Tenants*, citing *Sassi-Lehner v Charlton Tenants Corp.*, 55 AD3d 74, 78 (1st Dept. 2008).

145.   In *Fairmont Tenants*, the offering plan was held as the controlling document in a dispute over a space in a "The offering plan makes clear that there is no outdoor space allocated exclusively to defendants' apartment." *Fairmont Tenants*.

146.   In this instance, however, Plaintiff's Offering Plan contract was rewritten by the courts in order to void the explicit meaning of the contract, which all parties to the contract agreed with, and for which no alternative meaning has ever been given because none exists.  The law was not applied in Plaintiff's case but was ignored and disregarded, followed by retaliation by the courts.  The Decision proves the Judges fully understood the law and were being completely corrupt against Plaintiff in refusing to give him equal protection under the law for 12 years.

147.   The case also shows the cruelty of Defendants and the NYS Court judges under their supervision who destroyed Plaintiff and his family in horrific ways, including mental and health issues that were not present prior to the abuse received as part of Defendants' retaliatory civil RICO scheme.

**The Attorney for the Cop-op, Joseph Augustine, Submitted a Libelous Letter to the Manhattan Supreme Court that further proves the Retaliation through the Unconstitutional Filing Injunction (Exhibit 34)**

148.   In May 2018, Plaintiff's wife filed a suit in response to the co-operative corporation's Board taking measures to drive Plaintiff and his family from their Unit by shutting down the freight elevator without which Plaintiff's business could not run.

149.   The attorney for the co-op, Joseph Augustine, filed a letter with the court evoking the filing injunction to prevent an un-related suit, and is seeing abusing Plaintiff and his wife in order to stop the court from hearing Mrs. Brady's case:

> Under the Injunction, James Brady and those abetting him have been barred from filing any new legal proceedings against the Co-op unless he has first obtained written permission from the Administrative Judge of the Court. The injunction was issued against Mr. Brady and those aiding him, due to his incessant filing of numerous frivolous and meritless actions that have all been dismissed with prejudice and that, more recently, concluded with multiple judgments for attorneys' fee against Mr. Brady that were issued as sanctions atop the attached Injunction.

> Under New York law, an injunction is effective against the parties named, as well as those within their direct privity, affiliation, agency or control – even if the affiliate, agent, co-actor or other such person is not named in the injunction. Mere awareness of the injunction is enough to prohibit that person.

150.   Not only did the co-operative use the filing injunction to prevent an un-
related suit, but they libeled Plaintiff and his wife, prejudicing them before the courts:

> It bears noting, in closing, that Mrs. Brady's present action, like those filed by her
> husband and business partner, James H. Brady, is filled with demonstrably false
> and patently sanctionable misrepresentations that we intend to address in a formal
> motion for sanctions and dismissal directed against Jane and James Brady, their
> business, i.e. Studio 450, and Mr. Adinolfi.

151.   The letter is yet another example of the abuse suffered by Plaintiff at the
hands of the NYS Courts under the supervision of Defendant Janet DiFiore, and
Defendants' ongoing complicity in these crimes.

## On May 11, 2017 Justice Kornreich Issued a Decision Further Libeling Plaintiff, Filled with Intentionally Retaliatory Language, Which She Knew to be Entirely Untrue (Exhibit 35)

152.   In a May 11, 2017 Decision Justice Kornreich issued an outrageous and
entirely retaliatory decision, which shows that Defendants wanted Plaintiff to lose his
commercial co-op apartment and pay millions in unlawful court-created debt as part of
the same Civil RICO scheme.

153.   Herrick Feinstein, who were one of the law firms for billionaire Frank
McCourt and Chicago Title Insurance Co., sought the turnover of Plaintiff and his wife's
shares to the 12th Floor and Roof Unit – "the shares representing his interest in 450 West
31st Street owners Corp."

154.    The Decision also shows how the unconstitutional and retaliatory filing injunction is being used to harm Plaintiff and deprive him of his constitutional rights to the Courts.  Justice Kornreich states:

> Notwithstanding the plain frivolity of Brady's claims, which resulted in this court issuing the very sanction that was reduced to the subject judgment that the Herrick Parties now seek to enforce, Brady was unrelenting.  He engaged in a campaign of further vexatious litigation.

> This case is over.  Brady has lost.  There is no possibility of further appeal.

155.    The unlawful creditors were unsuccessful in seizing Plaintiff's co-op at that time, but persisted into forcing a sale in 2018.

156.    Justice Kornreich knows every word in her decision is a lie, as evinced by comparing her statements at the March 18, 2014 Oral Arguments and in the July 15, 2014 decision itself:

> THE COURT:   – it was the sponsor who put this in, it was the sponsor who owned the penthouse and roof.  Perhaps that was his intent.  (Tr. p. 54:11-20).

> THE COURT: - is an acknowledgment by all the courts that you have certain rights under paragraph 7.  The question left open is what are those rights. (p. 69:19).

> "Strictly speaking, Brady is correct that the question of whether such an easement interferes with his right to build structures on the roof or otherwise permitted by applicable law has never been determined and so is not barred;" (July 15, 2014 decision, p.15)"

> "Brady correctly notes" that the issue of whether the sale to Extell violated his rights was never reached, and that the issue of whether the sale of the air rights by 450 Owners Corp. to Sherwood violated Brady's rights could not have been reached in the prior actions."

65

157.   Lastly, **Exhibit 36** is a letter sent to all New York City and New York State

agencies, as well as the FBI and Justice Department, in which they were given proof that

Plaintiff's constitutional rights were being violated and that he was the victim of

retaliatory crimes.  None of them took any action proving a very dangerous and criminal

*quid pro quo* between those in power, and further highlights the need for this Court

intervention in these crimes.

FBI NEW YORK
26 Federal Plaza 23rd Floor
New York, NY 10278-0004
Dear FBI Agent:

Enclosed is a copy of an APPELLANT-DEFENDANT'S AFFIDAVIT IN
SUPPORT OF MOTION FOR REARGUMENT dated September 7, 2018 that
was just made to the New York Court of Appeals.

It is imperative that you immediately look at this motion and take appropriate
action. The Affidavit proves that the Justices of the New York Supreme Court,
Appellate Division, First Department and the Justices of the Court of Appeals
have refused to adjudicate the issue of the personal guarantees and what voids
them in any of the three Decisions.

As a result of these Courts' refusal to apply binding law and precedent that voided
the personal guarantees, my wife and I lost our life savings on September 5 2018
by having to sell our commercial co-op apartment (and give up our livelihood,
which was renting out the apartment on a daily basis) to pay a judgment on a
personal guarantee that was never adjudicated because the Justices knew binding
law and precedent voided the personal guarantees, as the landlord unlawfully
pleaded guilty in civil court from repeatedly "altering /changing" the building
from the "good and satisfactory as is condition" it was in at the time of due
diligence to an illegal office building that destroyed the buildings C of O, that then
caused the Department of Buildings to refuse to issue any more TCO's that is a
necessity to operate Brady's meeting hall businesses without a valid C of O, which
is worthless and illegal to occupy, yet on September 5, 2018, I was forced to pay

to this scofflaw that under the law and public policy precedent is unable to collect on the personal guarantees.

Through my letters to you, I pleaded that you stop this retaliation that I am being subjected to under color of law. So far my pleads for help have fallen on deaf ears which makes you culpable.

You need to finally get involved and pressure the Justices of the Court of Appeals to apply the binding law and precedent that voided the guarantees so that I can quickly recover the $1.75 million dollars that were stolen from me and my wife and paid to an admitted scofflaw that destroyed my corporations, solely because binding law and binding precedent were being totally ignored and not being followed or applied in the case against me. This is RICO.

## DEFENDANTS ARE NOT PROTECTED BY JUDICIAL IMMUNITY FOR THE UNLAWFUL CONDUCT THAT STARTED BEFORE THEY BECAME JUDGES

158.   As shown herein, part of Defendants fraud scheme and racketeering activities included not making judicial decisions in Plaintiff's cases in order to avoid having to answer by what legal authority Justice Kornreich rewrote Plaintiff's contract, and subsequently not making a ruling on which of the two decisions, the unlawful lower court rewriting, or the Appellate Division February 11, 2010 decision that affirmed Plantiff's right to the exclusive utilization of the premise's air rights, governed in the cases.

159.   Defendants' failure to adjudicate Plaintiff's cases was a violation of their explicit duty pursuant to New York Law.  It was a violation of their jurisdiction and an unlawful extra-judicial act.

160.   "A judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  Barrett v. Harrington, 130 F.3d 246, 255 (6th Cir. 1997)

161.   "The Supreme Court has established a two-prong test to determine whether an act is 'judicial.'" *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997).  First, the Court must consider whether the function is "normally performed by a judge." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  Second, the court must assess whether the parties dealt with the judge in his or her judicial capacity. *Id.*

162.   "The principal hallmark of the judicial function is a decision in relation to a particular case." *Mireles v. Waco,* 502 US 9 (Supreme Court 1991).

163.   "The State's Civil Practice Law and Rules provide generally that "the appellate division shall review questions of law and questions of fact on an appeal from a judgment or order of a court of original instance," N.Y.C.P.L.R. § 5501(c).

164.   "A judge will be subject to liability when he has acted in the "clear absence of all jurisdiction." *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990).

## DEFENDANTS ARE BEING SUED IN THEIR INDIVIDUAL CAPACITY

### The Eleventh Amendment Does Not Apply to the Present Case

165.   Plaintiff's action here against each of the named Defendants is in their individual capacities, and as an "enterprise" pursuant to Civil RICO of individuals

conspiring to deprive Plaintiff of his property and civil rights under color of law.

Accordingly, the Eleventh Amendment does not apply to the present suit.

166.   Though "unless a state consents to suit, the Eleventh Amendment bars suits brought against it in federal court by its own citizens. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44 (1996), the Eleventh Amendment "does not bar suits against state officials sued in their individual capacities. *See Hafer v. Melo,* 502 U.S. 21, 31-32, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

167.   "Section 1983 actions against state officials in their personal capacities alleging violations of federal constitutional rights are not actions against a state because, as a matter of law, unconstitutional acts performed by state officials cannot be authorized by the state." *Ex parte Young,* 209 U.S. 123  (1908).

168.   In order to sustain a claim under Section 1983 against Defendants, Plaintiff "must set forth sufficient factual allegations that defendants (i) acted under color of state law; (ii) caused Plaintiffs to be deprived of their constitutional or statutory rights; (iii) acted with discriminatory intent; and (iv) had a constitutional or statutory duty to act. *Burhans v. Lopez*, 280 U.S. 441 (2016).

## SCOPE OF JUDICIAL REVIEW

169.   Courts may "look to public records, including complaints filed in state court, in deciding a motion to dismiss." *Haygood v. Local 1181-1061, Amalgamated*

*Transit Union, AFL-CIO*, No. 14-CV-3998, 2016 WL 1255728, at \*3 n.4 (E.D.N.Y. Mar. 29, 2016).

170.  "When deciding a motion to dismiss, a district court may also review (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) documents deemed integral to the complaint, and (4) public records." *Id.*

## PLAINTIFF HAS SUFFERED AN "INJURY IN FACT" AND HAS STANDING TO BRING THIS SUIT PURSUANT TO 42 U.S.C. 1983

171.  Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases or Controversies." U.S. Const. art. III, § 2. "The purpose of Article III is to limit federal judicial power to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." *Montesa v. Schwartz,* 836 F.3d 176, 195 (2d Cir. 2016).

172.  The "irreducible constitutional minimum of standing requires Plaintiff to show three elements: 1) that it suffered an injury in fact; 2) a causal connection between the injury and the conduct of which Plaintiff complains; and 3) that it is likely rather than speculative that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

173. "**Impairments to constitutional rights are generally deemed adequate to support a finding of 'injury' for purposes of standing**." *Council of Ins. Agents & Brokers v. Molasky–Arman*, 522 F.3d 925, 931 (9th Cir. 2008).

174. To be sufficient for purposes of standing, an injury must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; see *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 125.

175. A "concrete" injury is one that is "de facto, that is, it must actually exist. It is 'real' and not 'abstract,' although an injury need not be tangible to be concrete. *Spokeo*, 136 S. Ct. at 1548. To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Id.* at n.1.

## CAUSES OF ACTION AGAINST
## DEFENDANTS JANET DIFIORE AND MICHAEL J. GARCIA

## CAUSE OF ACTION NO. 1
## 42 U.S.C. §1983 – VIOLATION OF EQUAL PROTECTION
## AND DUE PROCESS

176. Mr. Brady hereby incorporates by reference all averments in this Complaint.

177. 42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or Usage of any state or territory or the District of Columbia subjects or causes to be

subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress.

178.  "To state a claim under §1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015).

179.  For the first element, "a plaintiff's equal protection claim parallels his Title VII claim, except that a §1983 claim, unlike a Title VII claim, can be brought against a subordinate who committed the discriminatory act, as opposed to only against the employer. *Id.* at 88.

180.  Thus, in order to survive a motion to dismiss, a § 1983 plaintiff "must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color or state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).

181.  A Section 1983 lawsuit alleging a civil rights conspiracy "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action, the violation of a federal right." 42 U.S.C. § 1983. *Bartolini*, 2018 WL 3023161.

182.  Both Defendants are former prosecutors who ignored over a dozen letters from Plaintiff pleading with them to perform their job and duties, and to follow the law,

72

otherwise Plaintiff will be forced to pay $2.3 million on September 5, 2018 because of

the corruption and retaliation schemes of Supreme Court Judge Shirley Kornreich,

Supreme Court Judge Barry Ostrager, and certain New York Appellate Division First

Department Justices.

183.   The first crime pertains to the criminal scheme to replace my offering plan

contract and a higher February 11, 2010 Appellate Division, First Department decision

with Supreme Court Justice Shirley Kornreich's July 15, 2014 decision which voided

the rights these pieces of material evidence proved were appurtenant to my apartment,

and her decision issued $500,000 in sanctions that I'm forced to pay on September 5,

2018 if this scandal is not stopped.

184.   The second retaliation scandal is forcing me to pay a $1.7 million dollar

judgment against me because Supreme Court Judge Barry Ostrager and the Appellate

Division, First Department Justices refuse to apply this Court's binding law that voided

the personal guarantees as a matter of law and public policy, because the landlord

increased and changed the risk after the personal guarantees were signed, by turning his

garment factory building into an illegal office building that destroyed the certificate of

occupancy after the leases were signed.  The retaliation scheme is clear as day when you

review the Oral Argument Archives on the Appellate Division's website for May 16,

2018 starting at 25 minutes.  The video proves these justices colluded in a scheme to sit

silent and not ask or answer a single question, and they refuse to apply the law that voids

personal guarantees to the facts.

## CAUSE OF ACTION NO. 2
## CONSPIRACY PURSUANT TO 42 U.S.C. §1983

185.    Mr. Brady hereby incorporates by reference all averments in this

Complaint.

186.    A §1983 conspiracy claim requires "(1) an agreement between two or more

state actors or between a state actor and a private entity; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing

damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999).

187.    "Conspiracies are by their very nature secretive operations, and may have to

be proven by circumstantial, rather than direct, evidence." *Pangburn,* 200 F.3d at 72.

"To state a viable conspiracy claim, Plaintiff must provide some factual basis supporting

a meeting of the minds of the alleged conspirators to carry out the unlawful plan." *Webb*

*v. Goord,* 340 F.3d 105, 110 (2d Cir. 2003).  "Thus, Plaintiff must make an effort to

provide some details of time and place and the alleged effects of the conspiracy,

including facts to demonstrate that the defendants entered into an agreement, express or

tacit, to achieve the unlawful end." *Warren v. Fischl,* 33 F. Supp. 2d 171, 177 (E.D.N.Y.

1999).

188.   To avoid dismissal, Plaintiff must allege "facts upon which it may be plausibly inferred that defendants came to an agreement to violate Plaintiff's constitutional rights." *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012).

189.   "Allegations of conspiracy must allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 383 (SDNY 2012).

190.   42 U.S.C. § 1983, asserting that they "agreed with each other, and with others known and unknown, to deprive the NRA of rights secured and guaranteed by the First and Fourteenth Amendments to the United States Constitution and Sections Eight and Eleven of the New York Constitution."

191.   Both Defendants are former prosecutors who ignored over a dozen letters from Plaintiff pleading with them to perform their job and duties, and to follow the law, otherwise Plaintiff will be forced to pay $2.3 million on September 5, 2018 because of the corruption and retaliation schemes of Supreme Court Judge Shirley Kornreich, Supreme Court Judge Barry Ostrager, and certain New York Appellate Division First Department Justices.

192.   The first crime pertains to the criminal scheme to replace my offering plan contract and a higher February 11, 2010 Appellate Division, First Department decision with Supreme Court Justice Shirley Kornreich's July 15, 2014 decision which voided

the rights these pieces of material evidence proved were appurtenant to my apartment, and her decision issued $500,000 in sanctions that I'm forced to pay on September 5, 2018 if this scandal is not stopped.

193.    The second retaliation scandal is forcing me to pay a $1.7 million dollar judgment against me because Supreme Court Judge Barry Ostrager and the Appellate Division, First Department Justices refuse to apply this Court's binding law that voided the personal guarantees as a matter of law and public policy, because the landlord increased and changed the risk after the personal guarantees were signed, by turning his garment factory building into an illegal office building that destroyed the certificate of occupancy after the leases were signed.  The retaliation scheme is clear as day when you review the Oral Argument Archives on the Appellate Division's website for May 16, 2018 starting at 25 minutes.  The video proves these justices colluded in a scheme to sit silent and not ask or answer a single question, and they refuse to apply the law that voids personal guarantees to the facts.

## CAUSE OF ACTION NO. 3
## 42 U.S.C. §1985 – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

194.    Mr. Brady hereby incorporates by reference all averments in this Complaint.

195.    Section 1985(2) gives rise to a cause of action where "two or more persons conspire for the purposes of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."

196.    "To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.1986),*

197.    Section 1983 imposes liability upon any person who, acting under color of state law, deprives another of a federally protected right. 42 U.S.C. § 1983 (1982).

198.    Section 1983 also imposes liability upon municipalities for constitutional deprivations resulting from actions taken pursuant to government policy or custom. *Monell v. Dep't of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).*

199.    Both Defendants are former prosecutors who ignored over a dozen letters from Plaintiff pleading with them to perform their job and duties, and to follow the law, otherwise Plaintiff will be forced to pay $2.3 million on September 5, 2018 because of the corruption and retaliation schemes of Supreme Court Judge Shirley Kornreich, Supreme Court Judge Barry Ostrager, and certain New York Appellate Division First Department Justices.

200.   The first crime pertains to the criminal scheme to replace my offering plan contract and a higher February 11, 2010 Appellate Division, First Department decision with Supreme Court Justice Shirley Kornreich's July 15, 2014 decision which voided the rights these pieces of material evidence proved were appurtenant to my apartment, and her decision issued $500,000 in sanctions that I'm forced to pay on September 5, 2018 if this scandal is not stopped.

201.   The second retaliation scandal is forcing me to pay a $1.7 million dollar judgment against me because Supreme Court Judge Barry Ostrager and the Appellate Division, First Department Justices refuse to apply this Court's binding law that voided the personal guarantees as a matter of law and public policy, because the landlord increased and changed the risk after the personal guarantees were signed, by turning his garment factory building into an illegal office building that destroyed the certificate of occupancy after the leases were signed.  The retaliation scheme is clear as day when you review the Oral Argument Archives on the Appellate Division's website for May 16, 2018 starting at 25 minutes.  The video proves these justices colluded in a scheme to sit silent and not ask or answer a single question, and they refuse to apply the law that voids personal guarantees to the facts.

## CAUSE OF ACTION NO. 4
## VIOLATION OF CIVIL RICO 18 U.S.C. §1962

202.     Mr. Brady hereby incorporates by reference all averments in this Complaint.

203.     §1961(26) Section 1964(c) identifies four factors that must be satisfied to establish standing for a civil RICO claim: (1) the plaintiff must be a "person" (2) who sustains injury (3) to its "business or property" (4) "by reason of" the defendant's violation of §1962.1."

204.     RICO's requirements of a culpable "person" who conducts the affairs of a distinct "enterprise" through a "pattern" of "racketeering" in a way that proximately causes injury.

205.     To state a claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 245 (1989).

206.     Each element of a RICO claim requires additional analysis: an "enterprise" is marked by association and control; a "pattern" requires a showing of "continuity"— continuous and related behavior that amounts to, or poses a threat of, continued criminal violations; and "racketeering activity" involves the violation of designated federal laws. *Giulliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005).

207.     "A Civil RICO claims can only survive if the plaintiff alleges that its injuries were proximately caused by the alleged RICO violation." *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003).

## CAUSE OF ACTION NO. 5
## DEPRIVATION OF ACCESS TO THE COURTS

208.    Mr. Brady hereby incorporates by reference all averments in this

Complaint.

209.    Courts have long recognized that denial of access to courts is a redressable

constitutional injury. *Benjamin v. Fraser,* 264 F.3d 175, 185 (2d Cir. 2001).

210.    "The Supreme Court has recognized a constitutional right of access to the

courts, and the Second Circuit has recognized that the constitutional right of access to

the courts is violated where government officials obstruct legitimate efforts to seek

judicial redress." *Koutny v. Martin,* 530 F. Supp. 2d 84, 88 (D.D.C. 2007).

211.    "To succeed on an access to courts claim, a plaintiff must show that the

defendant caused the plaintiff ['s] injury or, put less succinctly, that the defendant took

or was responsible for actions that had the actual effect of frustrating the plaintiff's

effort to pursue a legal claim." *Olivia v. Town of Greece,* 630 F. App'x 43, 45 (2d Cir.

2015).

212.    Both Defendants are former prosecutors who ignored over a dozen letters

from Plaintiff pleading with them to perform their job and duties, and to follow the law,

otherwise Plaintiff will be forced to pay $2.3 million on September 5, 2018 because of

the corruption and retaliation schemes of Supreme Court Judge Shirley Kornreich,

Supreme Court Judge Barry Ostrager, and certain New York Appellate Division First

Department Justices.

## CAUSE OF ACTION NO. 6
## COHESIVE CENSORSHIP-AND-RETALIATION CAMPAIGN

213.   Mr. Brady hereby incorporates by reference all averments in this

Complaint.

214.   "To state a First Amendment retaliation claim, a plaintiff must establish

that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant

took an adverse action against him; and (3) there was a causal connection between this

adverse action and the protected speech." *Puglisi v. Town of Hempstead, Dep't of*

*Sanitation, Sanitary Dist. No.* 2, 545 F. App'x 23, 26 (2d Cir. 2013).

215.   Motive is typically established by showing the temporal proximity between

the protected activity and the adverse action, or a statement by the defendant(s)

concerning his motivation. *Bartolini*, 2018 WL 3023161, at 8.

216.   While the Second Circuit has "not drawn a bright line to define the outer

limits beyond which a temporal relationship is too attenuated to establish a causal

relationship between the exercise of a federal constitutional right and an allegedly

retaliatory action," courts have held that the timeframe is measured in months not years.

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d

Cir. 2001).

217. "'First Amendment rights may be violated by the chilling effect of governmental action that falls short of a direct prohibition against speech.'" *Zieper v. Metzinger*, 474 F.3d 60, 65 (2d Cir. 2007) (quoting *Aebisher v. Ryan*, 622 F.2d 651, 655 (2d Cir.1980)); see also *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)("To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury.").

218. "The First Amendment prohibits government officials from encouraging the suppression of speech in a manner which 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request.'" *Zieper*, 474 F.3d at 65-66 (quoting *Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir.1983)).

219. In determining whether government statements impede upon First Amendment rights, "what matters is the 'distinction between attempts to convince and attempts to coerce." *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (per curiam). The First Amendment "requires courts to draw fine lines between permissible expressions of personal opinion [by public officials] and implied threats to employ coercive state power to stifle protected speech." *Hammerhead*, 707 F.2d at 39.

220.    Threats made by public officials "oral or written statements made by public officials' could give rise to a valid First Amendment claim where comments of a government official can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request." *Okwedy*, 333 F.3d at 342.

221.    Thus, the central question here is whether the statements made in the court decisions in the suits Plaintiff filed threatened adverse action against him for taking any further action to protect his rights.

222.    "Reputational risk – the risk that negative publicity regarding an institution's business practices will lead to a loss of revenue or litigation – is just one of the threats to a bank or insurer's safety and soundness on which the Superintendent has previously issued guidance." Def. Reply Mem. L., at 7.

223.    "Chilled speech is not the sine qua non of a First Amendment claim. A plaintiff has standing if he can show either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech harms are sufficient to give a plaintiff standing." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).


**Government Retaliation for Exercising the First Amendment Right to File a
Criminal Complaint is Unconstitutional and Must Be Protected by This Court**

224.    Defendants have completely failed to protect Plaintiff as the victim of a crime and have instead engaged in adversarial litigation participating in the crimes or covering them up.  Defendant and other law enforcement agencies Plaintiff contacted failed to perform their normal procedures and violated Plaintiff's First Amendment rights.

225.    Federal case law is clear that a private citizen who is the victim of a crime has a First Amendment right to file a criminal complaint with the appropriate government agency.  That right is distinct from the discretion the agency has in making a determination whether to prosecute or not.  But the law enforcement or government agency must make an actual "Determination" that can be reviewed and if necessary appealed or challenged in court.

226.    "Undoubtedly, Plaintiffs are correct when they state that they have a First Amendment right to file complaints with the government.  *Hogan v. County of Lewis*, 929 F.Supp 2d 130 (District Court ND NY 2013).  "It is axiomatic that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition government for the redress of grievances." *Lott v. Andrews Ctr.,*259 F.Supp.2d 564, 568 (E.D.Tex.2003).  The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Jackson v. N.Y. State,* 381 F.Supp.2d 80, 89 (N.D.N.Y.2005).

## CAUSE OF ACTION NO. 7
## TORTIOUS INTERFERENCE WITH CONTRACT

227.   Mr. Brady hereby incorporates by reference all averments in this Complaint.

228.   The elements for a tortuous interference with contract claim are defined in federal law as: (1) the existence of a valid contract between the parties; (2) the defendant must have had knowledge of the contractual agreement; (3) the alleged interference must have caused a breach of the contract; (4) the interference must be both intentional and improper; and (5) plaintiffs must establish they suffered damages as a result of the alleged contractual interference. *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 47 (1st Dep't 2009).

229.   Regardless of the courts having held erroneously that the Co-op could sell the development rights without a waiver, there is no way for co-op to have sold the development rights without tortuously interfering with the rights leased to Plaintiff's unit. The Court twice mentions this interference in the July 15, 2014 decision:

> Initially, the Co-op and Sherwood sought to obtain a waiver from the Bradys regarding the air rights (id. at _ _ 219, 224; Katz Complaint, _ _ 33, 35). However, when Brady refused to sign the waiver as presented (Katz Complaint, _ _ 54-56), the Co-op and Sherwood proceeded without his consent. (Page 5).

> That the Co-op or Sherwood initially sought a waiver from Brady does not constitute an "admission" that the ZLDEA interfered with any of Brady's rights. Indeed, according to Brady, he was specifically told by the Co-op that "the

transaction will be consummated with or without your waiver" (Co-op Complaint _ 222)

230.   After the ZLDEA was signed, a 40 foot easement restriction was implemented and Plaintiff no longer has any right to construct or extend structures on or above the roof since the development rights needed to build were shifted to Sherwood's lot so that they could use the rights to construct or extend a larger structure on their parcel of land.

231.   The Court Suppressed the Testimony that it received from the Co-op Corporation's Land Use Attorney Expert Harold Goldman.  Justice Kornreich states on page 9 of decision "Also, submitted was an affidavit by a land use attorney opining on the interpretation of certain aspects of the City's Zoning Lot Resolution, as well as a reply brief which was based largely on the record of oral argument, which had been held after Brady's opposition was submitted but prior to the return date on the motion."

232.   This court suppresses what it learnt in that affidavit, which was it was impossible to build habitable structures, either commercial or residential, without having the right to utilize permissible development rights. This finding would prove that it would be impossible for the coop corporation to sell the premises development rights without interfering with my right to construct or extend habitable structures.

233.   Both Defendants are former prosecutors who ignored over a dozen letters from Plaintiff pleading with them to perform their job and duties, and to follow the law,

otherwise Plaintiff will be forced to pay $2.3 million on September 5, 2018 because of

the corruption and retaliation schemes of Supreme Court Judge Shirley Kornreich,

Supreme Court Judge Barry Ostrager, and certain New York Appellate Division First

Department Justices.

234.    The first crime pertains to the criminal scheme to replace my offering plan

contract and a higher February 11, 2010 Appellate Division, First Department decision

with Supreme Court Justice Shirley Kornreich's July 15, 2014 decision which voided

the rights these pieces of material evidence proved were appurtenant to my apartment,

and her decision issued $500,000 in sanctions that I'm forced to pay on September 5,

2018 if this scandal is not stopped.

235.    The second retaliation scandal is forcing me to pay a $1.7 million dollar

judgment against me because Supreme Court Judge Barry Ostrager and the Appellate

Division, First Department Justices refuse to apply this Court's binding law that voided

the personal guarantees as a matter of law and public policy, because the landlord

increased and changed the risk after the personal guarantees were signed, by turning his

garment factory building into an illegal office building that destroyed the certificate of

occupancy after the leases were signed.  The retaliation scheme is clear as day when you

review the Oral Argument Archives on the Appellate Division's website for May 16,

2018 starting at 25 minutes.  The video proves these justices colluded in a scheme to sit

silent and not ask or answer a single question, and they refuse to apply the law that voids

personal guarantees to the facts.

## CAUSE OF ACTION NO. 8
## HONEST SERVICES FRAUD
## 18 U.S.C. §1346

236. Mr. Brady hereby incorporates by reference all averments in this

Complaint.

237. The elements for a cause of action for Honest Services Fraud requires a

showing of the following elements: (1) a scheme to defraud that includes a material

deception; (2) with the intent to defraud; (3) while using the mails, private commercial

carriers, and/or interstate wires in furtherance of that scheme; and (4) that resulted in the

deprivation of the intangible right of honest services. 18 U.S.C. 1346.

238. Both Defendants are former prosecutors who ignored over a dozen letters

from Plaintiff pleading with them to perform their job and duties, and to follow the law,

otherwise Plaintiff will be forced to pay $2.3 million on September 5, 2018 because of

the corruption and retaliation schemes of Supreme Court Judge Shirley Kornreich,

Supreme Court Judge Barry Ostrager, and certain New York Appellate Division First

Department Justices.


## CAUSE OF ACTION NO. 9
## FAILURE TO SUPERVISE

239.   Mr. Brady hereby incorporates by reference all averments in this Complaint.

240.   Negligent supervision is a variant of the common law tort of negligence, therefore breach of duty is proven in the same way as other negligence cases.  In some instances it is described as whether a reasonable person could have foreseen that injuries of the type suffered would likely occur under the circumstances.

241.   A claim of negligent supervision is addressed by § 213 of the Restatement (Second) of Agency, which provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to others: in the supervision of the activity; or . . . in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control. Restatement (Second) of Agency § 213 (1958).

242.   Under New York and federal law, employers are generally found liable for their employees' behavior, and if negligent supervision led to the reckless behavior, the employer could certainly be found liable.  Negligent supervision of employees can include allowing one employee to harass another, failing to provide training for the use of dangerous tools or chemical, ignoring threats or violence in the workplace, allowing an employee under the influence of drugs or alcohol to operate machinery.

243.   In a judicial setting, allowing judges in the lower court to rewrite contracts on behalf of politically powerful parties is a failure to supervise those courts and judges.

89

### CAUSE OF ACTION NO. 10
### GROSS NEGLIGENCE

244.   Mr. Brady hereby incorporates by reference all averments in this Complaint.

245.   Pursuant to New York law, "the traditional common-law elements of negligence are: duty, breach, damages, causation and foreseeability." *Hyatt v Metro-North Commuter R.R.*, 16 AD3d 218 (1ˢᵗ Dept 2005).  Gross Negligence tracts regular negligence claims but the negligent conduct is more extreme. *Id.* at 220.

246.   The facts contained herein show that besides the overt criminal activity, retaliation, and Civil RICO Defendants engaged in, they were also gross negligent in their handling of Plaitniff's cases, which they had a duty to adjudicate and in which they had a duty to apply the law.


### CAUSE ACTION NO. 11
### DEFAMATION AND LIBEL

247.   Mr. Brady hereby incorporates by reference all averments in this Complaint.

248.   The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false

90

light, or have resulted in criticism, dishonor, or condemnation of any person.  28 U.S.C. 4100.

249.    Similarly, New Jersey State case law states "Defamation imposes liability for publication of false statements that injure the reputation of another." *Printing Mart-Morristown v. Sharp Elecs. Corp*. 116 N.J. 739, 765 (1989).

250.    In order to succeed in a defamation claim under New Jersey defamation law, plaintiffs must prove the following four (4) elements: (1) The assertion of a false and defamatory statement concerning another; (2) The unprivileged publication of that statement to a third party; (3) Fault amounting at least to negligence by the publisher; (4) The Plaintiff was damaged by the statement. *DeAngelis v. Hill*, 180 NJ 1 (2004).

251.    A plaintiff must specify the defamatory words and the meaning he or she attaches to them. *Mieli v. Rosenblum*, 245 NJ Super 8, 12-14 (App. Div 1991).

**Defamation Per Se**

252.    Defamation per se is a legal principle which acknowledges certain statements as so inherently defamatory and inflammatory, that a plaintiff need not prove they suffered injury or damages as a result of the statement.

253.    Courts classify statement as 'defamatory per se' if it falls into one of these four categories. Note that these four categories are interpreted broadly and are not all inclusive, *MacKay v. CSK Publishing*, 300 NJ Super 599 (App. Div. 1997):

- Statements charging the plaintiff with the commission of a crime,
- Statements imputing certain loathsome diseases to the plaintiff,

91

- Statements which affect a person in his business, trade, profession or office, and
- Statements which impute unchastity to a woman.

254.  "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice. *Lawrence v. Bauer*, 89 NJ 451, 463 (1982).

255.  If a defendant has actual knowledge of a statements falsity, has serious doubts as to a publication's truth, or acts with reckless disregard for the truth of the matter at hand, then actual malice will be found.

256.  The burden of proof standard for nonpublic (private) figures is negligence, while the standard for public figures, limited-purpose public figures, and public officials is actual malice. *Feggans v. Billington*, 291 N.J. Super. 382 (Super. Ct. App. Div. 1996).

**Stigma-Plus Claim**

257.  The Fourteenth Amendment's Due Process Clause prohibits a state actor from depriving a citizen of her life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

258.  "A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause to create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)).

259.   "Loss of one's reputation can, however, invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572–73 (1972).

260.   A "stigma-plus" claim, it involves "'injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process.'" *LoPorto v. County of Rensselaer*, 115CV0866LEKDJS, 2018 WL 4565768, at *15 (N.D.N.Y. Sept. 24, 2018).

261.   To prevail on such a claim, Plaintiff must show "'(1) [stigma—] the utterance of a statement sufficiently derogatory to injure plaintiff's reputation, that is capable of being proved false, and that he or she claims is false, and (2) a plus—a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Paterno v. City of New York*, No. 17 CIV. 8278 (LGS), 2018 WL 3632526, at *3 (S.D.N.Y. July 31, 2018)(quoting.

262.   The statements must be "capable of being proved false." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010)

263.   "In order to survive a motion to dismiss on a 'stigma-plus' claim, the complaint must plead the particulars of a 'statement sufficiently derogatory to injure' the plaintiff's reputation; not merely general characterizations or summaries of those statements." *Vega,* 596 F.3d at 81.

264.    Courts look to state substantive law of defamation in analyzing the "stigma" component of a "stigma-plus" claim. *Sharpe v. City of New York*, No. 11 Civ. 5494, 2013 WL 2356063, at *6 n. 10 (E.D.N.Y. May 29, 2013).

265.    Federal courts in New York often look to New York defamation law when analyzing a "stigma-plus" claim. "The gravamen of stigma as part of a due process violation is the making under color of law of a reputation-tarnishing statement that is false." *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47–48 (2d Cir. 2001).

266.    The March 16, 2018 Oral Argument transcript found in **Exhibit 28** proves all of the cruel statements contained in these decisions libeling Plaintiff are entirely false.  These libelous assertions have become part of the Judicial Record and will prejudice Plaintiff's reputation irreversibly.


## CAUSE OF ACTION NO. 12
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

267.    Mr. Brady hereby incorporates by reference all averments in this Complaint.

268.    Intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress. *Hyatt v. Trans World Airlines*, 943 S.W. 2d 292 (1987).

94

269.   "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Restatement (Second) of Torts section 46 cmt. h (1965).

270.   "The court must determine whether an average member of the community upon learning of the facts alleged by plaintiff would exclaim "outrageous!" *Viehweg v. Vic Tanny Intern. of Missouri, Inc.*, 732 S.W.2d 212, 213 (Mo.App.1987).

271.   On December 9, 2009 Plaintiff was hospitalized due to the psychological and physical toll of Defendants' crimes.  Plaintiff was hospitalized until December 18, 2018, including having suicidal thoughts.  Defendants' actions are directly responsible for this inflection of emotional distress, including the brazenness with which Defendants carried on after Plaintiff had informed of them of the crimes.  The level of cruelty exhibited shocks the conscience of any civilized society.

## CAUSE OF ACTION NO. 13
## PRIMA FACIE TORT

272.   Mr. Brady hereby incorporates by reference all averments in this Complaint.

**273.**   The elements of a prima facie tort are "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification ... (4) by an act or series of facts that would otherwise be lawful." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 NY2d 314, 332 (1999).

274.    "Prima facie tort was designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy." *Bassim v. Hassett*, 184 AD2d 908, 910 (2012).

## PRAYER FOR RELIEF

## DECLARATORY RELIEF

275.    **WHEREFORE,** Plaintiff seeks Declaratory Relief from this Court for the following crimes committed by Defendants stemming from the RICO conspiracy fraud schemes detailed herein:

276.    **First:**  Declare that Plaintiff's Offering Plan Contract and February 11, 2010 Appellate Division, First Department Decision were rewritten by a lower New York Supreme Court July 15, 2014 Decision in order to void the rights affirmed by the Offering Plan and the Appellate Division Decision.

277.    **Second:**  Declare that the Appellate Division February 11, 2010 Decision and Offering Plan contract were intentionally replaced with the July 15, 2014 lower court decision in order to seize the $70-90 million worth of air rights affirmed as being appurtenant to Plaintiff's 12th Floor and Roof Unit.

278.    **Third:**  Declare that the issue of the Personal Guarantees, which was Plaintiff's defenses against the enforcement of a judgment and the central and only issue

of the case *IGS Realty v. James H. Brady*, was intentionally never adjudicated by the

NYS courts, depriving Plaintiff of the exercise of his constitutional rights.

279.   **Fourth**:  Declare that a person who is not a party to a contract cannot be

convicted of breaking that contract under the Constitution and under New York State

Law.

280.   **Fifth:**  Declare that the $2.4 million judgment against Plaintiff that he had

to pay on September 5, 2018 was court-created debt, and in violation of NYS and

Federal Law.

281.   **Sixth**:  Declare that the broad filing injunction placed on Plaintiff, as part of

this conspiracy fraud scheme is unconstitutional and was implemented in order to

obstruct justice.

282.   **Seventh**:  Declare that the words said about Plaintiff in Supreme Court

Justice Margaret Chan's November 23, 2015 Decision, and in Justice Shirley Kornreich's

July 15, 2014 Decision were defamatory and libelous, and have never been affirmed in

any decision by any court.

283.   Plaintiff has caused irreversible damage by refusing to adjudicate Plaintiff's

case and refusing to apply the admitted facts to Plaintiff's cases.

284.   Plaintiff further seeks $225 million in damages, which include treble

damages pursuant to Civil RICO, and the value of the air rights appurtenant to his

former 12th Floor and Roof Unit commercial co-operative, and the unlawful, court-created debt of $2.5 million.

285.   And any such further relief as this Court deems just and proper.


DATED:  May 14, 2019


James Brady, *Pro se Plaintiff*
510 Sicomac Avenue
Wyckoff, NJ 07481.
bradyny@gmail.com

BIBI N TRAVIA
Notary Public
State of New Jersey
My Commission Expires Jul 30, 2020